Edward **LIEBERMAN**, Plaintiff-Appellant,

v.

**GULF OIL CORPORATION**, Defendant-Appellee.

United States Court of Appeals Second Circuit.

Argued Jan. 20, 1964.

Decided April 24, 1964.

Bernard Tompkins of Tompkins & Lauren, New York City, for plaintiff-appellant.

Leo T. Kissam of Kissam & Halpin, New York City (Edmond K. Leach and Anthony S. Genovese, New York City, on the brief), for defendant-appellee.

Before FRIENDLY, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge.

Plaintiff appeals from a judgment for defendant entered upon the verdict of a jury. Jurisdiction is based upon diversity of citizenship.

Plaintiff sought to recover on two counts. In the first he claimed that defendant's agents, "by means of knowingly false and misleading statements to United States Government authorities caused the arrest of the plaintiff by United States Government agents in Bronx County in the Southern District of New York for the alleged crime of transporting stolen property in interstate commerce in violation of U.S.Code Title 18 § 2315, a felony." The second count was for malicious prosecution in causing indictment of the plaintiff for conspiracy to transport stolen goods.

The plaintiff complains of errors in the admission of evidence, in instructions to the jury, and in denying his motion

to dismiss an affirmative defense which set up the claim that plaintiff was guilty of the crimes charged.

In origin this case goes back to the theft in 1955 of several million dollars worth of geophysical and seismographic maps and accompanying memoranda from the files of the defendant's Pittsburgh offices. W. B. Edwards, a staff attorney of defendant, was designated to conduct an investigation of the theft. He was assisted in this investigation by one John M. Leivia.

In December 1956 Edwards received information that some of the stolen maps were in the possession of the plaintiff Lieberman at the offices in New York City of a corporation of which Lieberman was president. Inventing a pretext for doing so Edwards arranged for a meeting at Lieberman's office. He was accompanied by Leivia. At the meeting Edwards was shown certain maps which he recognized as copies of the maps which had been stolen from defendant.

Edwards promptly executed an affidavit in support of a request for the issuance of a search warrant authorizing a search of the premises of Lieberman's company. On the next day a United States Commissioner in Pittsburgh issued a warrant for Lieberman's arrest. The warrant was based on a complaint sworn to by a Special Agent of the Federal Bureau of Investigation. The complaint charged that Lieberman had transported stolen property in interstate commerce.

A few days later Lieberman was indicted along with several others including his brother, whose name was Emanuel Lester, on a charge of conspiracy to transport stolen property. Lieberman, Lester and one other defendant were tried and Lieberman was acquitted, the other two convicted.

Plaintiff thereafter brought the present proceeding, alleging, in effect, that both his arrest (first count) and his indictment (second count) were brought about by knowingly false statements made to the authorities by defendant's agents Edwards and Leivia.

■ With respect to the first count plaintiff complains of certain rulings on the introduction of evidence and of certain instructions to the jury. We do not find it necessary to examine plaintiff's contentions since a consideration of the entire record reveals that plaintiff's evidence, even taken in its best light, is wholly insufficient to support a verdict for plaintiff. In other words, since, if the jury had found for the plaintiff, we would have been forced to reverse on the basis of plaintiff's evidence alone, and order the entry of judgment for the defendant, it can be of no moment whether the court erred in admitting evidence for the defendant or in giving instructions which were too favorable to defendant. It should be clearly understood, of course, that we are not stating that the court committed any error in these respects. Whether or not there was such error is irrelevant in the light of our holding that the plaintiff failed to make a case on which a verdict could be rested.

■■ In order to recover on his first count it was necessary for plaintiff to show that defendant's agents made false statements about plaintiff which either were known to be false or were made with reckless indifference to their truth or falsity, and that these statements led to plaintiff's arrest. The only statement allegedly of this kind which has been brought to our attention was a statement made by Leivia to one of the agents of the Federal Bureau of Investigation on the day before Lieberman's arrest to the effect that Leivia thought there were 1100 pounds of stolen maps located in the building in which Lieberman's corporate offices were located.

Leivia's statement fails by a wide margin to provide a basis for a finding for plaintiff. First, there is no evidence from which the jury could properly conclude that Leivia's statement was false, since it was a statement about his belief and there is no indication that Leivia did not honestly believe that a large number of maps were secreted on Lieberman's premises. Second, Leivia's statement was true in its central allegation

that there were stolen maps at Lieberman's place of business. Even if the statement be taken as one of fact, it is claimed to be false only in the incidental particular that there were 1100 pounds of such maps, and even in that particular, there is no evidence to show that it was false or that, if so, Leivia did not have good reason for believing it to be true. Finally, and conclusively, there was no evidence to show that in securing the warrant in Pittsburgh the FBI relied on, or even knew of, the statement made by Leivia the night before in New York.

Turning to plaintiff's second count, the claim for malicious prosecution, we find that with respect to that claim plaintiff cites as error (1) "permitting defendant to detail and emphasize the criminal record of defendant's brother," (2) denying plaintiff's motion to dismiss defendant's affirmative defense, (3) instructing the jury "that the issue of probable cause hinged solely on belief of defendant's agents," (4) submitting an interrogatory establishing a "standard of intent contrary to the rule that malice may be inferred from want of probable cause."[1]

With respect to the second count, the court submitted the following special interrogatory to the jury:

"Was the primary purpose of Leivia or Edwards or both actuated by malice against Lieberman rather than by an intention of bringing an offender to justice?"

The jury answered this interrogatory "No."

■ Unless there was error which would vitiate the jury's finding that the action of defendant was not malicious, the finding of no malice is conclusive against plaintiff on the second count. It is of no consequence, for example, that the court may have erred in its instruction as to probable cause ((3) above), since, if plaintiff failed to establish

malice, the issue of probable cause is irrelevant.

We hold that none of the alleged errors was sufficient to vitiate the jury's finding of an absence of malice.

■ The interrogatory to which plaintiff objects is that pertaining to malice which is set forth above. We find no error in the phrasing of the interrogatory when set in the background of the charge on this subject.

■ To establish that he was prejudiced by the error which he claims occurred by reason of the court's refusal to dismiss the affirmative defense of actual guilt for lack of proof, plaintiff argues that the evidence admitted under the affirmative defense, evidence which he claims the jury would have been instructed to exclude from its consideration had his motion been granted, may have influenced the jury's conclusions regarding plaintiff's affirmative case. However the evidence admitted under the affirmative defense could at most have caused confusion between the issue of actual guilt and that of probable cause; it could not have affected the jury's finding of absence of malice.

Lieberman's final contention is that the trial judge improperly admitted evidence regarding the criminal record of his brother, Emanuel Lester, who was a co-defendant with Lieberman in the Pittsburgh criminal trial and his alleged co-conspirator. Over objection, Gulf was permitted to introduce the convictions of Lester and another co-defendant, Odie Seagraves, in the Pittsburgh trial and to show, through cross-examination of Lieberman, that his brother had a criminal record dating back to 1953 and that Lieberman knew of that record.

■ Proof of Lieberman's acquittal was essential to recovery on his second claim. Of course the indictment, which included Lester and Seagraves, was in-

1. In support of this second count plaintiff submitted evidence, in addition to the proof introduced under the first count, that defendant's agents Leivia and Edwards made false statements before the

grand jury in Pittsburgh subsequent to Lieberman's arrest. Appellee does not contend that this evidence would have been insufficient to sustain a jury verdict for plaintiff on the second count.

troduced in evidence. In such circumstances it would have been highly artificial to attempt to withhold from the jury the information that Lester and Seagraves had been convicted. Moreover, the possibility that the jury might draw prejudicial inferences from the conviction of alleged co-conspirators was substantially less than in the ordinary case, since it knew that the same jury that had returned the convictions had also acquitted Lieberman.

The trial judge instructed the jury that:

> "It is the right of every person charged with crime to stand or fall with the proof of the charge made against him, not against somebody else. Conviction of an alleged fellow conspirator after a trial is of itself not proof of guilt of one now being charged. Lieberman has a right to have his guilt or innocence determined by the evidence presented against him in this trial not by what has happened to him and someone else in a different trial at another time and place."

We hold that this evidence was properly admitted and that Lieberman's rights were adequately protected by the trial judge's jury charge.

■ Lieberman's objection to the trial judge's ruling that Gulf could cross-examine him concerning his knowledge of his brother Lester's criminal record is also without merit. During cross-examination of Lieberman Gulf brought out evidence from which the jury could have concluded (1) that Lieberman had loaned Lester substantial sums of money for use in Lester's oil ventures, (2) that

Lieberman had given Lester his power of attorney and had allowed Lester to use his name in obtaining an oil lease, and (3) that Lieberman was to share in the profit from any oil that might be discovered. The jury might also have found that Lester had obtained the lease because of information in the stolen maps and in furtherance of the conspiracy and that Lieberman's action assisted the conspirators. A prime issue, then, was whether Lieberman knew of the conspiracy when he became associated in this way with his brother. When such an issue has been raised in a criminal case it has frequently been held that it is both competent and relevant to prove that the defendant knew about his alleged co-conspirators' criminal record when he became associated with them. United States v. Cohen, 145 F.2d 82 (2d Cir. 1944), cert. denied, 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637 (1945); Castle v. United States, 238 F.2d 131 (8th Cir. 1956); Wilson v. United States, 109 F.2d 895 (6th Cir. 1940). We think that rule is applicable here.

■ Lieberman contends, however, that the intermediate instruction that the court gave the jury regarding Lester's pre-Pittsburgh convictions allowed the jury too much leeway to infer guilt from association.[2] Although Lieberman objected to the admission of Lester's criminal record, he did not object to the language of the court's intermediate instruction or request any additional limiting instruction. It was his burden to do so if he wished to preserve this point on appeal. Case v. New York Central R. R. Co., 329 F.2d 936 (2d Cir. 1964); United States v. Mont, 306 F.2d 412

2. The court instructed the jury as follows:
> "I will charge you on the fact that the record of any other person who is alleged to have been a conspirator either as a defendant or a conspirator named but not indicted is admissible for a singular purpose, that is, *to draw whatever inference you can from the record of an alleged co-conspirator* provided you are satisfied that the other conspirator knew of that record."

Lieberman contends that the italicized phrase left the jury "free to infer that if plaintiff consorted with a person of shady background (his brother), he shared his guilt."

Lieberman also alleges that Gulf was permitted to introduce the record of a conviction concerning which Lieberman had no knowledge. Under the court's instruction, that issue was properly left to the jury.

(2d Cir.), cert. denied. 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962); United States v. Smith, 283 F.2d 760 (2d Cir. 1960), cert. denied, 365 U.S. 851, 81 S.Ct. 815, 5 L.Ed.2d 815 (1961). Moreover, the infirmity, if any, would seem to have been cured by the court's final charge to the jury previously quoted.

Since we find no error which vitiated the jury's special finding of absence of malice, the resulting verdict for defendant on the second count must be accepted.

Judgment affirmed.