**Richard MORALES, Plaintiff,**

v.

**The UNITED STATES of America, et al., Defendants.**

Nos. 94 Civ. 4865 (JSR), 94 Civ. 8773 (JSR).

United States District Court, S.D. New York.

April 21, 1997.

---

Craig Kaplan, Jonathan C. Moore, New York City, for Daniel Adami.

James I. Meyerson, New York City, for Richard Morales.

Serene K. Nakano, Asst. U.S. Atty., for Defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

These consolidated cases arise from a Ragnarok-like confrontation on March 4, 1993 between agents of the federal Drug Enforcement Agency ("DEA") and employees of the New York City Department of Transportation ("DOT"). While many material facts remain genuinely in dispute, this much seems clear:

At approximately 6:00 p.m. on March 4, 1993, plaintiff Daniel Adami, a DOT employee, was supervising other DOT employees preparing to tow an illegally parked vehicle from the streets of mid-town Manhattan, when he was approached by DEA Agent Robert Stia, who informed him that the vehicle was being employed in a Government surveillance operation then underway. Adami Dep. at 136, 149. Adami radioed his supervisor, Captain Pedro Rodriguez, who instructed Adami to proceed with the tow, stating it was department policy to finish a tow once a vehicle was already hooked and raised. *Id.* at 154–59. Adami relayed this information to Stia but added that he would attempt to obtain authorization from the New York City Police Department ("NYCPD") to desist from the tow. *Id.* at 167. Stia responded that "someone is going to get arrested" if the vehicle was not released. *Id.* at 163. Accordingly, Adami entered the cab of his tow truck, with the engine still running, to radio the NYCPD for permission to stop the tow. *Id.* at 166–71. But even as Adami waited for a response, Stia and several other DEA Agents, including Donald Bailey, David McNamara, and Kevin Mancini, opened the cab door, pulled Adami's arm behind his back and head, forced him outside, and arrested him (charging him with obstruction of justice in violation of 18 U.S.C. § 111). *Id.* at 173, 177–86. Adami was then placed in a DEA van, which drove off—with two DOT tow vehicles in hot pursuit.

Meanwhile, co-plaintiff Richard Morales, another DOT employee, heard the commotion between Adami and the DEA agents on

his own tow truck radio. Morales drove to the site of the incident, parked his vehicle a short distance from the tow site, and began to direct traffic. Morales Dep. at 116–25, 132–34. Noticing, however, that two DOT vehicles were departing in apparent pursuit of a van, Morales, who did not know who was driving any of the vehicles, got inside his tow truck and followed the vehicles for a few blocks *Id,* at 148–50. Morales shortly found the vehicles stopped, with the DEA van wedged between the two DOT tow trucks. *Id.* at 173–74; Smith Dep. at 39–41. Apparently, the larger of the DOT trucks had rammed the DEA van, forcing it onto the sidewalk.

Morales parked his own vehicle a short distance away and walked toward the wedged trucks. Morales Dep. at 172–74. By now, four or five more DOT vehicles had arrived at the scene. McNamara Dep. at 73–74. At this point, another DEA agent, Robert Smith, approached Morales, who was wearing a DOT uniform. Smith Dep. at 69. Smith, whose gun was drawn, *id.* at 54–55, repeatedly inquired of Morales as to who had driven the large tow truck that had rammed the DEA van, *see* Morales Dep. at 181–84; McNamara Dep. at 76–77; Matta Dep. at 53. When Morales replied that he did not know, Morales Dep. at 181, Smith grabbed Morales, who unsuccessfully attempted to pull away. *Id.* at 183–84, 188. Smith then placed Morales under arrest and allegedly (though this is disputed) slammed Morales against a nearby vehicle, twisted his arm, and kneed him in the groin area. *Id.* at 193, 211. Like Adami, Morales was charged with obstruction of justice in violation of 18 U.S.C. § 111.

Four months later, on July 16, 1993, all charges against Adami and Morales were dismissed without prejudice. A year or more after that, Adami and Morales separately filed the instant actions, alleging various federal and state claims arising from the aforementioned events. The actions were subsequently consolidated for all purposes. Following discovery, the parties filed motions, which this Court (to whom the cases were reassigned on March 1, 1997) resolved in a summary order dated March 31, 1997. This memorandum will serve to reaffirm those rulings and briefly to state the reasons therefor.

■ At the outset, the Government contends that it is shielded from any and all liability under the "discretionary function exception" to the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. § 2680(a). But although the "discretionary function exception" exempts the Government from tort liability for certain acts of its agents that "involve an element of judgment or choice," *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991), its purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 323, 111 S.Ct. at 1273. Here, while the DEA agents' decisions to arrest and prosecute plaintiffs for obstruction of justice involved an element of discretion, nothing in those decisions involved the "balancing of policy factors" or considerations of public policy that the discretionary function exception is designed to protect. *See Caban v. United States,* 671 F.2d 1230, 1232–33 (2d Cir.1982) (exception does not protect discretionary decision of INS agent to detain aliens because the decision to detain does not "involve a choice between competing policy considerations"); *see also Wilson v. United States,* 767 F.Supp. 551, 552 (S.D.N.Y.1991) (noting that "claims for false imprisonment and malicious prosecution do not fall within the discretionary function exception"). Instead, the discretionary function exception "protects only governmental actions and decisions based on considerations of public policy," and riot the kinds of decisions involved here. *Berkovitz v. United States,* 486 U.S. 531, 537, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988); *see also Gaubert,* 499 U.S. at 322–24, 111 S.Ct. at 1273–74. Indeed, to expand the exception to encompass *any* government act or decision that simply involved the exercise of discretion would entirely eviscerate, and contradict, the Government's waiver of sovereign immunity under the FTCA.

■ The individual DEA agent defendants—against whom claims of constitutional violations are asserted pursuant to the doc-

trine of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)—likewise seek wholesale dismissal, claiming they are entitled to qualified immunity. *See Lennon v. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995). But as the Court indicated at the March 25, 1997 hearing in this matter, *see* transcript, material disputed facts in the record now before the Court preclude the Court from presently determining the qualified immunity of these *"Bivens"* defendants as a matter of law. *See In re State Police Litig.,* 88 F.3d 111, 124–25 (2d Cir.1996); *Warren v. Keane,* 937 F.Supp. 301, 306 (S.D.N.Y.1996) (citing *Warren v. Dwyer,* 906 F.2d 70 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990)). For example, there is a genuine factual dispute as to whether the DEA agents who arrested plaintiff Adami knew that he was entering his truck solely for the purpose of obtaining NYCPD permission to stop the tow. If they so understood, then they (and any reasonable DEA agent similarly situated) necessarily lacked a basis for believing that Adami had any intention of obstructing justice. Similarly, there is a genuine factual dispute as to whether agent Smith had any reasonable basis to infer that plaintiff Morales had anything to do with the truck jamming. If not, neither Smith nor any reasonable DEA agent similarly situated would have had a basis for grabbing Morales. *See Lennon,* 66 F.3d at 423–24.

Given the factually disputed nature of the qualified immunity issues, it follows that the Court must also deny Morales' cross-motion for summary judgment on his claims of false arrest, as there remain disputed issues as to whether Agent Smith had probable cause to arrest Morales for obstruction of justice. *See, e.g., United States v. Moreno,* 897 F.2d 26, 31 (2d Cir.), *cert. denied,* 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990).

The Court likewise denies defendants' motion to dismiss plaintiff Adami's claims of excessive force and assault,[1] since, on the evidentiary record presented on this motion, the Court cannot determine, as a matter of law, that "no rational jury could have found that the force used [by defendants] was so excessive that no reasonable officer would have made the same choice." *See Lennon,* 66 F.3d at 426. Adami has testified that, without consultation or warning, the various DEA agents pulled him out of his car, threw him against the side and hood of his truck, and violently pulled his arm behind his back. Whether these actions were necessary, as the Government contends, to avoid Adami's driving off in the truck or to control him in resisting of arrest, cannot be determined by the Court based upon the conflicting testimony presented here.

On the other hand, the Court does grant the motion of the *"Bivens"* defendants to dismiss the malicious prosecution claims against them, as the plaintiffs have failed to meet their burden of "show[ing] some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 117 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). Although the Second Circuit in *Singer* did not expressly define what kinds of post-arraignment deprivations would constitute a constitutional injury, the Court of Appeals did suggest that where—as here—the arrested person is released after arraignment, has no restrictions on travel, is not required to post bail, and is only required to appear at subsequent hearings (at which time the charges are dismissed), there may not be an injury "sufficient to implicate the Fourth Amendment." *Id.* at 117 & n. 6. At least one judge of this District has applied *Singer* to malicious prosecution claims against state police officers, concluding that there was an insufficient deprivation even where plaintiff was required to appear in court three times and incurred $13,000 in legal fees. *Niemann v. Whalen,* 911 F.Supp. 656, 670–71 (S.D.N.Y. 1996) (Conner, J.). The Court agrees with Judge Conner's reasoning and concludes that, absent any indication that a plaintiff

---

1. The government did not move to dismiss plaintiff Morales' claims of excessive force and assault.

was subject to material restrictions on liberty greater than those here alleged, there is no injury of a constitutional dimension to support a claim of malicious prosecution pursuant to *Bivens*.

■ The same analysis does not apply, however, to plaintiffs' malicious prosecution claims against the Government, which are grounded in state tort law rather than (as in the *Bivens* claims) being premised on constitutional violations. Here there remains a genuinely disputed material issue of fact as to whether the criminal prosecutions of Adami and Morales were "terminated in their favor," an essential element of such a claim. *See Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir.1980). Although the criminal charges against Adami and Morales were dismissed "without prejudice" and the statute of limitations for the charges of obstruction of justice (five years) has not yet expired, plaintiffs have introduced some indirect evidence (albeit of limited admissibility) that, after the criminal charges were dismissed, the Assistant United States Attorney in charge of prosecuting Adami and Morales for criminal obstruction of justice indicated that there was no basis for the charges against them. *See* Kaplan Aff; Friess Aff. Accordingly, taking all reasonable inferences most favorably to plaintiffs, summary judgment must be denied. *See Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir.1994).

■ On the other hand, with respect to plaintiffs' claims of malicious abuse of criminal process, summary judgment must be granted to all defendants, since plaintiffs have failed to adduce admissible evidence of any impermissible "collateral objective" on the part of defendants to further use already-issued criminal processes against Adami and Morales for an improper purpose. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994). "[T]he mere act of issuing process does not give rise to a claim [for malicious abuse of criminal process]," *see Lopez v. City of New York*, 901 F.Supp. 684, 691 (S.D.N.Y.1995), because "[t]he gist of abuse of process is the improper use of process after it is regularly issued." *Cook*, 41 F.3d at 80. Thus, because

plaintiffs have, at most, simply adduced evidence that the defendants had potentially unlawful motives in initially arresting and criminally charging Adami and Morales, and nothing beyond, their claim must fail. *See Lopez*, 901 F.Supp. at 692.

■ The Court also finds plaintiffs' claims of intentional infliction of emotional distress to be legally deficient, because the alleged misconduct of the defendants simply does not rise to the level of being "extreme and outrageous" as a matter of law. *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993). Likewise, Adami's general claim of negligence must be dismissed as deficient, for "under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994).

Additionally, the Court denies Adami's requests for injunctive and declaratory relief. With respect to injunctive relief, it is axiomatic that such relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real of immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) (holding injunctive relief inappropriate for arrestee who was subject to a chokehold "[a]bsent a sufficient likelihood that he [would] again be wronged in a similar way"). Moreover, the Court notes that plaintiff Adami has an adequate remedy at law through which he can challenge the alleged unlawful acts of the Government and its agents. *See id.* For this reason, the Court, in its discretion, additionally denies Adami's request for declaratory relief. *See, e.g., White v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 913 F.2d 165, 168 (4th Cir.1990) (citing *A.L. Mechling Barge Lines v. United States*, 368 U.S. 324, 331, 82 S.Ct. 337, 342, 7 L.Ed.2d 317 (1961)).

■ Turning, finally,[2] to Adami's motion to amend the Complaint, the Court, fol-

---

**2.** The previously-denied motion of the Govern-    ment to compel the deposition of a non-party

lowing the filing of its Order of March 31, 1997, gave leave to the parties to submit further papers on this motion, since it, alone, had not been the subject of oral argument at the hearing on March 25, 1997.[3] Having now reviewed those supplemental submissions, the Court again denies the motion insofar as it seeks to add a claim for an allegedly unlawful "strip search" and to add a defendant (Agent Paul Toner) allegedly involved in that search. Adami's proffered reason for waiting until November 1, 1995 (almost a year past the filing of his original Complaint) to seek amendment of his Complaint to add a new claim of an alleged unlawful strip search (and a new defendant related thereto) is that "discovery revealed for the first time that the plaintiff has been subjected to a full body strip search." Pl. Adami Mem. in Support of Motion to Amend at 5–6; 4/11/97 Moore Letter in Support of Reconsideration. The Court finds such an assertion unavailing, given that plaintiff Adami, the very object of the allegedly intrusive strip search, could have informed his counsel of such a violation of his person at the inception of this law suit. Instead, Adami waited until almost the close of discovery and the beginning of dispositive motion practice between the parties before asserting this new claim. This dilatory conduct and neglect is alone sufficient for the Court, in its discretion, to deny Adami's motion, pursuant to Fed.R.Civ.P. 15(a). In addition, it would be highly prejudicial to the existing defendants (let alone the proposed new defendant) to add this claim of which they had no reasonable notice for such a

prolonged period after the events in question.[4]

However, with respect to the other prong of the motion to amend, involving the deletion of Agents Orduna and Smith as defendants in Adami's Complaint and the adding of Agents Donald Bailey, David McNamara, and Kevin Mancini in the same, the Court vacates its prior denial and grants Adami's motion in this respect, for it has been persuaded that such amendments to the Complaint merely correct Adami's mistake as to the identity of the agents involved in the various claims against him. See Barrow v. Wethersfield Police Dep't, 66 F.3d 466 (2d Cir.1996).[5] These corrections will not occasion any further delay in the proceedings or provide any prejudice to the parties, since the newly added defendants have already been deposed on the very issues in question and the parties have represented that no further discovery will be needed or requested as a result of the granting of this amendment.

In all other respects, the Order of March 31, 1997 is hereby reaffirmed and the parties are directed to appear for the trial of this case at 9:00 a.m. on October 20, 1997.

SO ORDERED.

---

witness, Kenneth Murray, a photographer for The Daily News, also decided by the Order of March 31, 1997, is not further addressed in this Memorandum.

3. Plaintiff Adami previously had submitted two proposed "First Amended Complaints," dated November 1, 1995 and April 15, 1996, respectively. Here, the Court considers only the November 1st Complaint, as any amendment seeking to add additional claims as late as April 15, 1996 would have been patently untimely.

4. Moreover, Adami's motion to add a claim of an unconstitutional strip search would be futile in any event. See generally Freeman v. Marine Midland Bank of New York, 494 F.2d 1334, 1338 (2d Cir.1973) (futile to maintain claims that would

not survive a motion to dismiss). The strip search in question, which lasted only a "couple of seconds," was conducted privately and involved no physical contact or cavity search by defendants. Adami Dep. at 213–17; Bailey Dep. at 46, 50. Based on these undisputed facts, it is clear the Adami's claim of an unconstitutional strip search would fail on the merits. Cf. Doe v. Berberich, 704 F.Supp. 269, 272 n. 3 (D.D.C. 1988).

5. The Court, however, denies Adami's motion to amend the Complaint to add another "Doe" defendant, for at this late stage in the litigation, any further amendments to the Complaint would be untimely, expensive and prejudicial. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).