Ashanti CHIMURENGA, Plaintiff,

v.

**THE CITY OF NEW YORK, et al., Defendants.**

**No. 98 CIV. 0176 JSR.**

United States District Court, S.D. New York.

April 12, 1999.

Ashanti Chimurenga, pro se.

James Moschella, New York City, for Tyrone Fields.

Susan Halatyn, Assistant Corporation Counsel, New York City, for all other Defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

On October 22, 1997, plaintiff Ashanti Chimurenga, an attorney, was arrested for allegedly attempting to smuggle contraband into the Adolescent Reception and Detention Center on Riker's Island. *See* Rule 56.1 Statement of Defendant Tyrone Fields ("Fields 56.1 Stmt.") ¶¶ 3, 23; Pl. Response to Fields 56.1 Stmt. ¶¶ 3, 23. The incident arose when plaintiff, who was teaching a course at the Detention Center, attempted to bring a box of books into the facility. *See* Deposition of Ashanti Chimurenga ("Pl.Dep.Tr.") at 26–35. Upon entering the Detention Center, plaintiff, in compliance with standard security scanning, placed the box of books on a conveyor leading to an x-ray machine. *See id.* at 33. During the scanning process, defendant Tyrone Fields, the correction officer monitoring the x-ray machine, stated that he perceived what appeared to be a suspicious object in the box and directed his colleague and codefendant, Correction Officer Raymond Padula, to search further. *See* Fields Dep. Tr. at 21–27. Padula did so and found a razor blade in the box. *See id.* at 34–36, 41. Plaintiff asserts that since there was no razor blade in the box when she surrendered it for scanning, Padula must have "planted" the blade and

that the entire incident was jointly concocted by Padula and Fields. *See* Amended Complaint ¶ 44; Pl. Br. at 19–20; Pl. Dep. Tr. at 106, 108.

After the blade was confiscated, plaintiff was questioned and eventually arrested and charged with promoting prison contraband in the first degree and with criminal possession of a weapon in the fourth degree. *See* Fields 56.1 Stmt. ¶ 23; Pl. Resp. to Fields 56.1 Stmt. ¶ 23. The charges were subsequently dismissed on motion of the Bronx County District Attorney's Office. *See* Fields 56.1 Stmt. ¶ 24; Pl. Resp. to Fields 56.1 Stmt. ¶ 24. Nonetheless, the Department of Corrections utilized the incident as a basis for denying plaintiff a Legal Assistant Pass that would have allowed her access to courthouse holding facilities for juvenile inmates. *See* Deposition of Joseph Guarino ("Guarino Dep. Tr.") at 9–10. Plaintiff, whose job required her to interview youthful offenders, sought reconsideration of that decision, but her request was denied without further hearing. *See* Pl. Dep. Tr. at 84, 86–87.

Thereafter, on January 12, 1998, plaintiff filed this suit against the City of New York, Corrections Officers Fields and Padula, Department of Corrections Commissioner Bernard Kerik, Department of Corrections Warden Elizabeth Heard, and Department of Corrections Acting Director of Labor Relations Joseph Guarino, asserting that she had been the victim of false arrest, malicious prosecution, denial of equal protection, deprivation of liberty without due process, and negligence. *See* Amended Complaint. Following discovery, the defendants moved for summary judgment on all claims asserted against them.

Upon consideration of the parties' written submissions and oral arguments, the Court hereby grants the defendants' motions in part and denies them in part.

As to plaintiff's negligence claim (under New York State law), summary

judgment must be granted because plaintiff has neither alleged that any of the defendants owed a duty of care to the plaintiff, *see Cohen v. Standard Bank Investment Corporation (Jersey) Ltd.*, No. 97 Civ. 3802(SAS), 1998 WL 782024 (S.D.N.Y. Nov. 6, 1998); *Almonte v. Coca–Cola Bottling Company of New York, Inc.*, 959 F.Supp. 569, 576–77 (D.Conn.1997); *cf. Logan v. Bennington College Corp.*, 72 F.3d 1017, 1029 (2d Cir.1995), nor adduced any admissible evidence that any of the defendants acted in an actionably negligent manner. Indeed, plaintiff's entire theory of what occurred is premised, not on negligence, but on intentional misconduct. The only actions in the record that might even arguably be called negligent relate to plaintiff's arrest and prosecution; but New York law provides that a plaintiff may not recover under general negligence principles for a claim that a defendant failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution, *see Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994), *citing Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 744 (4th Dep't 1979); *Morales v. United States*, 961 F.Supp. 633, 638 (S.D.N.Y.1997); *Dirienzo v. United States*, 690 F.Supp. 1149, 1155 (D.Conn.1988) (construing New York law).

■ Plaintiff's equal protection claims under the Fourteenth Amendment and under 42 U.S.C. § 1983 must likewise be dismissed because plaintiff has failed to adduce any admissible evidence of disparate treatment based on impermissible considerations such as race or religion, an essential element of such a claim.[1] *See Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir.1996). Indeed, the only indication of disparate treatment in the record is plaintiff's allegation that a white art teacher was not arrested when attempting to enter Riker's Island with a razor blade. *See*

Amended Complaint ¶¶ 41–42. Quite aside from the fact that an art teacher is not similarly situated to the plaintiff for purposes of determining whether he or she might have an innocent reason for possessing a razor blade, this allegation is insufficient to defeat summary judgment because it is supported only by inadmissible hearsay. *See* Pl. Dep. Tr. at 75–76 (referring to hearsay statements by unspecified persons to the effect that a white art teacher had not been arrested when discovered entering Riker's Island with a razor blade); *see also H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454–55 (2d Cir.1991) (hearsay insufficient to defeat summary judgment).

■ Plaintiff's due process claim—which alleges that the defendants violated her due process rights by failing to grant her a hearing at which she could appeal the decision denying her application for a Legal Assistant Pass—must also be dismissed. *See* Amended Complaint ¶¶ 92, 95–97. The requirements of procedural due process extend only to those interests "encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Accordingly, in order to bring a procedural due process claim, a plaintiff must first identify some protected liberty or property interest. *See Narumanchi v. Board of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir.1988). Here, while plaintiff alleges in her Amended Complaint that she has a protected "liberty interest" in access to the "Courthouse pens," Amended Complaint ¶ 96, she has failed to come forward with any legal authority in support of this position and the Court's independent analysis of the issue indicates that no such liberty interest exists.

---

1. Although plaintiff's assertions as to the theory of her equal protection claim are so vague as to warrant dismissal on that ground alone, the gravamen of her equal protection claim, as it appears in the Amended complaint, seems to be selective enforcement of prison contraband regulations, *see* Amended Complaint ¶¶ 41–42, 73, and the Court has analyzed the claim accordingly.

■ A protected liberty interest "may arise from two sources—the Due Process Clause itself and the laws of the states." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (quotation marks omitted); *Paul v. Davis*, 424 U.S. 693, 710–11, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). While courts have uniformly rejected the claim that a liberty interest in prison visitation is inherent in the Due Process Clause itself, *see, e.g., Thompson*, 490 U.S. at 460, 109 S.Ct. 1904; *Glenn v. Gonzales*, No. 89 Civ. 2602(PNL), 1991 WL 222109, *1 (S.D.N.Y. Oct. 18, 1991), state law has been found to create such an interest in certain contexts. *See Kozlowski v. Coughlin*, 539 F.Supp. 852, 855–57 (S.D.N.Y. 1982). In particular, a state may create a protected liberty interest where its laws or regulations place substantive limits on official discretion that constrain the power of state officials to deny the liberty at issue. *See Silano v. Sag Harbor Union Free School District*, 42 F.3d 719, 724–25 (2d Cir.1994); *Verri v. Nanna*, 972 F.Supp. 773, 799 (S.D.N.Y.1997). Here, however, plaintiff has not specified any law or regulation that limits the discretion of the Department of Corrections' to grant or deny a Legal Assistant Pass, and the evidence of record suggests that no such law or regulation exists. *See* Guarino Dep. Tr. at 22. Plaintiff's due process claim must therefore be dismissed.[2]

It follows that all claims against defendant Joseph Guarino must also be dismissed. While plaintiff's Amended Complaint notably fails to specify which counts are directed at which defendants, the record indicates that Mr. Guarino's sole involvement in this case stems from his role in approving the decision of Department of Corrections investigators to deny plaintiff a Legal Assistant Pass. Accordingly, the Court's decision to dismiss plaintiff's due process claim—the sole count of the Amended Complaint relating to the Legal Assistant Pass—likewise mandates that Mr. Guarino be dismissed from this case.

Plaintiff's claims against defendants Elizabeth Heard and Bernard Kerik must also be dismissed, because plaintiff has failed to adduce any competent evidence of any wrongdoing by either of them. Indeed, the only "evidence" of record pertaining to either defendant is a speculation that a report relating to plaintiff's arrest may have been signed by Warden Heard. *See* Deposition of Thomas Cossean at 45. On any analysis, such speculation is insufficient to support any claim against Heard (let alone Kerik), and plaintiff effectively concedes as much by offering no response to their arguments for summary judgment.

This leaves plaintiff's claims against defendants Padula, Fields, and the City of New York for false arrest and malicious prosecution. While plaintiff brings these claims under both 42 U.S.C. § 1983 and under New York law, the elements of these claims are substantially the same whether brought under § 1983 or state law, so far as the individual defendants are concerned. *See Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir.1992); *see also Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir.1994), *citing Martin v. City of Albany*, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (N.Y.1977). Since, however, there are differences between the relevant state and federal law when applied to a municipal

---

**2.** The Court notes parenthetically that recent Supreme Court precedent has, in certain contexts, made it more difficult to claim a protected liberty interest based on prison regulations. In *Sandin v. Conner*, the Supreme Court held that an inmate could claim a protected liberty interest based on state law or regulation only if the interest was of such importance that its deprivation would work an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 473, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). While *Sandin* may be limited to inmates, if it is read broadly to encompass all claims relating to prison regulations it would provide additional support for dismissing plaintiff's claim, for plaintiff not only fails to identify a basis in state law or regulation for her alleged liberty interest, but also makes no showing that deprivation of the interest would result in significant hardship.

defendant such as the City, the liability of the individual defendants, Padula and Fields, will be discussed first.

■ As to the false arrest claims, the defendants argue that the claims must be dismissed because the discovery of a razor blade in plaintiff's belongings created probable cause for her arrest. This might exonerate other officers involved in the arrest, but it is irrelevant to defendants Fields and Padula, who are accused of "planting" the blade. *See, e.g., Dunn v. City of Syracuse*, 83 A.D.2d 783, 443 N.Y.S.2d 463, 464 (4th Dep't 1981) ("One who wrongfully accuses another of criminal conduct and induces or procures that person's arrest may be liable for false arrest."); *Jensen v. Barnett*, 178 Neb. 429, 431–32, 134 N.W.2d 53 (1965); *cf. Lieberman v. Gulf Oil Corp.*, 331 F.2d 160, 162 (2d Cir.1964). While the proof of this allegation is entirely circumstantial, it is not insufficient to create a jury issue as to whether Padula and Fields worked in concert to plant the blade and thereby falsely engineered plaintiff's arrest. Among other things, plaintiff has testified not only that she never placed any razor blade in the box of books but also that there was no opportunity for anyone else besides Padula to do so, since she inspected the books for approximately forty minutes on the day before she brought them to the Detention Center, *see* Pl. Dep. Tr. at 33, personally placed the books in the box shortly before she left her apartment for the facility on October 22, 1997, *see* Pl. Affidavit dated February 17, 1999 ¶ 13, and kept the box in her sole and exclusive possession until it was surrendered for scanning, *see* Pl. Aff. ¶ 13; Pl. Dep. Tr. at 29–30. Furthermore, plaintiff testified that the blade was in plain view in the box when it was "discovered" by Padula, *see* Pl. Dep. Tr. at 35–36,

a location consistent with her theory that the blade was hastily planted.

As to Fields' complicity, plaintiff testified in her deposition that after she initially placed the box of books on the conveyor belt, officer Fields ran the box through the x-ray machine to the end of the belt, where officer Padula was standing, without freezing the conveyor or otherwise indicating that any suspicious item might be present, *see* Pl. Dep. Tr. at 106; but that he then reversed the conveyor belt and sent the box back into the machine, only after which did he announce the presence of a suspicious object in the box. *See id.* at 34–35. Taken in conjunction with the testimony relating to Padula's activities, a jury could reasonably conclude that a likely explanation for this sequence of events was that Fields was acting in concert with Padula and that his operation of the conveyor belt was designed to give Padula an opportunity to plant the razor blade.

Thus, drawing all reasonable inferences in favor of the plaintiff, *see Grain Traders, Inc. v. Citibank*, 160 F.3d 97, 100 (2d Cir.1998), there are triable issues of fact as to whether the razor blade was "planted" in the box by the individual or concerted actions of Padula and/or Fields.[3]

■ As to the malicious prosecution claims, the defendants argue that summary judgment must be granted because plaintiff can establish none of the four essential elements of a malicious prosecution claim: (1) that the defendant commenced or continued a criminal proceeding against the plaintiff; (2) that the proceeding terminated in the plaintiff's favor; (3) that the defendant lacked probable cause to believe the plaintiff was guilty of the crime charged; and (4) that the defendant acted with actual malice. *See Cook*, 41 F.3d at 79. The defendants' motion must

---

**3.** While the defendants insist that summary judgment must nevertheless be granted because there is no evidence that either Fields or Padula would have had any motive to plant the blade, questions of motive are traditionally for trial. *See Patrick v. LeFevre*, 745 F.2d

153, 159 (2d Cir.1984) ("This Court has consistently held where subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable.")

be denied, however, because there is a triable issue of fact as to each element.

■ As to the first element—initiation of a criminal prosecution—the defendants argue that they did not play a sufficiently active role in initiating or prosecuting the charges against the plaintiff to be held liable. While the defendants would be correct if all they had done was to provide truthful information and evidence to prosecuting authorities, *see DeFilippo v. County of Nassau*, 183 A.D.2d 695, 696, 583 N.Y.S.2d 283 (2d Dep't 1992), there is, as discussed above, a triable issue as to whether the defendants planted evidence on the plaintiff. Where a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution. *See Babi–Ali v. City of New York*, 979 F.Supp. 268, 276 (S.D.N.Y.1997); Restatement (Second) of Torts § 653 cmt. g; *cf. DeFilippo*, 183 A.D.2d at 696, 583 N.Y.S.2d 283 (dismissal required where no allegation that defendant knowingly provided false or incomplete information to authorities).

As to the second element of a malicious prosecution claim, the defendants argue that since the criminal charges against the plaintiff were voluntarily dismissed on the District Attorney's motion, there was no judicial determination on the merits and plaintiff consequently cannot establish favorable termination. This is a nice question, because even though there are many situations in which a voluntary dismissal does not constitute a favorable termination on the merits, *see generally O'Brien v. Alexander*, 101 F.3d 1479, 1486 (2d Cir. 1996) (discussing the "confusion in the case law" on favorable termination), there are also circumstances in which even a bare voluntary dismissal may, in context, indicate the innocence of the accused. *See Hankins v. Great Atlantic and Pacific Tea Company*, 208 A.D.2d 111, 622 N.Y.S.2d 678, 678–81 (1st Dep't 1995); *Gallagher v. State*, 176 Misc.2d 226, 673 N.Y.S.2d 801, 809 (N.Y.Ct.Cl.1997); *cf. Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir.1997) (suggesting that abandonment of prosecution may constitute favorable termination where disposition indicates innocence); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1154–55 (2d Cir.1995) (acknowledging the possibility that after *Hankins* a dismissal in the interest of justice may constitute a favorable termination under certain circumstances); *Kurschus v. PaineWebber*, 16 F.Supp.2d 386, 394 n. 2 (S.D.N.Y.1998) (dismissal in the interests of justice may constitute a favorable termination).

Deciding, therefore, whether a voluntary dismissal is indicative of innocence requires a careful examination of the record. Here, however, the single piece of relevant evidence adduced by the parties is the transcript of the hearing at which the charges against the plaintiff were dismissed. *See* Munic. Def. Mot. Ex. I. The transcript indicates only that the Government made its motion to dismiss "based upon [plaintiff's] background and [its] review of the facts." *Id.* While ambiguous, this at least raises a reasonable possibility that the dismissal was for lack of evidence, *i.e.,* favorable to the plaintiff, and that, accordingly, summary judgment is not appropriate on this issue. *See Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir.1994).

As to the defendants' contention that the plaintiff cannot establish the third element of a malicious prosecution claim—lack of probable cause—the argument fails because, as discussed above in connection with plaintiff's false arrest claims, there is a triable dispute as to whether genuine probable cause existed or whether the individual defendants manufactured it falsely. This dispute not only prevents the Court from granting summary judgment on the ground that probable cause is lacking but dictates the conclusion that a triable issue exists as to the fourth and final element of a malicious prosecution claim: malice. Where, as here, there is a triable issue as to probable cause, there will almost always be a triable issue as to malice, since "the existence of malice may be in-

ferred from a finding that defendants lacked probable cause." *Id.* at 631. This is even more the case where, as here alleged, the defendants attempted to falsely create a sham probable cause.

Thus, there is a genuine dispute as to each of the elements of plaintiff's malicious prosecution claims, and the defendants' motion for summary judgment on those claims must therefore be denied as to defendants Padula and Fields.

One final issue remains: whether the City may be held liable on plaintiff's false arrest and malicious prosecution claims. To the extent that plaintiff brings such claims under § 1983, the City may not be held liable since a plaintiff who seeks under that statute to recover from a municipality for the actions of its employees must prove that the actions resulted from a municipal custom or policy. *See Monell v. Department of Social Services,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Walden v. Wishengrad,* 745 F.2d 149, 153 (2d Cir.1984). Here, plaintiff has failed to adduce any competent evidence that her arrest or prosecution was the result of a City policy or practice.

To the extent, however, that plaintiff seeks to impose liability on the City under state law, there is no reason to dismiss her claims at this time. "[T]he rules that govern the vicarious liability of a municipality [under § 1983] do not apply in common-law actions for false arrest and false imprisonment." *Claude H. v. County of Oneida,* 214 A.D.2d 964, 626 N.Y.S.2d 933, 936 (4th Dep't 1995). Under the common law, unlike § 1983, a municipality may be held liable for common law false arrest and malicious prosecution on a theory of respondeat superior. *See Johnson v. Town of Colonie,* 102 A.D.2d 925, 477 N.Y.S.2d 513, 514 (3d Dep't 1984).

In sum, the defendants' summary judgment motions are decided as follows: (1) summary judgment is granted in favor of all defendants on plaintiff's claims of negligence, denial of equal protection, and deprivation of due process; (2) summary judgment is granted in favor of defendants Guarino, Kerik and Heard on all claims asserted against them; (3) summary judgment is denied with respect to plaintiff's state and federal claims for false arrest and malicious prosecution against defendants Padula and Fields; and (4) summary judgment is granted with respect to plaintiff's federal claims for false arrest and malicious prosecution against the City of New York, but denied with respect to plaintiff's state claims for false arrest and malicious prosecution against the City of New York.

Plaintiff (who is serving as her own counsel) and counsel for the remaining parties are directed to jointly telephone Chambers by April 23, 1999 to set a trial date for the remainder of this action.

SO ORDERED.