**Jeremy S. KAMAL, Plaintiff–Appellant,**

v.

**Aaron HOPMAYER, Defendant–Appellee,**

Ann Toner, sued in her personal capacity, Bethany Ganley, sued in her personal capacity, and James Johnson, sued in his individual capacity, Defendants.

No. 07–0646–cv.

United States Court of Appeals, Second Circuit.

Nov. 12, 2008.

Christopher D. Watkins, Michael H. Sussman, on the brief, Goshen, NY, for Plaintiff–Appellant.

James A. Randazzo, Hawthorne, NY, for Defendant–Appellee.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. ROGER J. MINER, Hon. SONIA SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

Plaintiff-appellant Jeremy Kamal appeals from a judgment entered in the United States District Court for the Southern District of New York (Brieant, *J.*) granting summary judgment to defendant-appellee Aaron Hopmayer and dismissing Kamal's complaint. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

■ The district court granted summary judgment to Hopmayer on Kamal's malicious prosecution claim because it found the evidence insufficient for a jury to conclude that Hopmayer had initiated Kamal's prosecution. We agree. The substance of the call that Johnson allegedly received from "Aaron" after arresting Kamal does not suggest any collaboration between Hopmayer and the police, much less that Hopmayer "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir.2000) (citations omitted). With respect to the interview of Kamal's ex-girlfriend, B.B., Kamal has identified no evidence suggesting that it was instigated by Hopmayer. Johnson and defendant Acting Assistant Principal Toner both testified that B.B.'s statement was taken by Toner, not Hopmayer. While Toner did say that Hopmayer oversaw her work, she said only that Hopmayer reviewed her findings and did not suggest that he played any role in selecting the students to be interviewed. The circumstances of B.B.'s interview therefore do not support an inference that Hopmayer was "responsible for providing false information or manufactured evidence that influences a decision whether to prosecute," *Chimurenga v. City of New York*, 45 F.Supp.2d 337, 343 (S.D.N.Y. 1999).

We need not decide today whether claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* can be asserted against individuals via 42 U.S.C. § 1983, because Kamal's evidence, in any event, is insufficient to establish that Hopmayer discriminated against him

on the basis of his race, color or national origin. *Cf. Bruneau v. South Kortright Central School District,* 163 F.3d 749, 755 (2d Cir.1998) ("[W]e need not address the extent to which Title IX subsumes a § 1983 claim against ... individual defendants....").

 Kamal alleges that Hopmayer's frequent visits to Kamal's English class and discussions there of his military service during the first Gulf War created a hostile educational environment. But mere discussion of military service does not establish discriminatory animus, and Kamal does not allege that Hopmayer expressed any prejudice or negative sentiments about Iranians, Muslims, or any other group during those discussions. Nor do the circumstances of Kamal's suspension suggest that he suffered discrimination. Although Hopmayer punished R.Y. less severely than he punished Kamal, the record indicates that he did so on the basis of a teacher's eyewitness report that R.Y. had been "making every effort to hold [Kamal] back" and that Kamal was the clear aggressor. Even if R.Y. taunted Kamal on the school bus the day before, it was Kamal who initiated the altercation in the school hallway by verbally challenging R.Y. and who was the first to strike the other with a closed fist.

The extension of Kamal's term of suspension does not indicate discrimination because there is no evidence that Hopmayer was the final decision maker with respect to the extension. Although Hopmayer may have told Kamal and his parents of the extension at the March 10 meeting, Kamal's father testified that Assistant Superintendent Cooper told him shortly thereafter that *she* could not allow Kamal to return to the school, which suggests that she ultimately was responsible for the extension. There is no evidence that Cooper's decision was motivated by discriminatory animus.

Kamal's claim that Hopmayer retaliated against him for speech protected by the First Amendment of the United States Constitution fails for substantially the reasons given by the district court: to the extent Kamal claims retaliation through his unlawful prosecution, the claim fails because Kamal has not adduced evidence that Hopmayer initiated the prosecution, as discussed above; and to the extent Kamal claims retaliation by his suspension, the claim fails because Kamal cannot show that the suspension or its extension was in retaliation for his protected speech. As discussed above, there is no evidence that Cooper's decision to extend Kamal's suspension was attributable to discrimination.

For the foregoing reasons, we AFFIRM the district court's judgment.