**Mark COOK, Plaintiff–Appellee,**

v.

**Roberta SHELDON and Nelson Saldana, New York State Troopers, Defendants–Appellants.**

**No. 302, Docket 94–7282.**

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1994.

Decided Dec. 2, 1994.

---

Frederic L. Lieberman, Asst. Atty. Gen., New York City (G. Oliver Koppell, Atty. Gen. of the State of N.Y., Marcie S. Mintz, Asst. Atty. Gen., of counsel), for defendants-appellants.

James I. Meyerson, New York City, for plaintiff-appellee.

Before: VAN GRAAFEILAND, MINER and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Mark Cook brought a civil rights action under 42 U.S.C. § 1983 against two New York State Troopers in the United States District Court for the Southern District of New York (Louis L. Stanton, *Judge*). The claims are based on false arrest, malicious prosecution, and malicious abuse of process. Cook alleges that the Troopers first arrested him and then charged him with a felony, both without probable cause. They did this, Cook maintains, because he had the temerity to advise his friend, who was being interrogated, to remain silent and to get a lawyer. The district court denied the Troopers' motion for summary judgment on qualified immunity grounds, holding that the Troopers' motive to arrest and prosecute Cook was an issue of fact.

The Troopers appeal, contending that they were entitled to qualified immunity as a matter of law because they had probable cause to arrest Cook for knowing possession of a car whose vehicle identification number ("VIN") had been removed. Accordingly, they argue, any issues about their motive to arrest Cook were irrelevant.

We conclude that the Troopers have not yet earned qualified immunity as a matter of law because, under the facts alleged by Cook, the Troopers may be held to have violated Cook's clearly established rights. We, therefore, affirm the denial of summary judgment.

## BACKGROUND

Many of the facts are undisputed.

Mark Cook is a paralegal for a small New York City law firm. One Sunday evening in the autumn of 1992, Cook and some friends were driving back to Manhattan after spending the day at a game farm in the Catskill Mountains. Cook's friend, Frank Serrano, was driving a 1985 Dodge Aries, which Serrano had recently purchased at an auction. Also in the car were Serrano's wife and mother-in-law, as well as his infant son. Cook is an American citizen; Serrano and his family are citizens of Nicaragua. (Serrano and his family were originally co-plaintiffs in this action, but withdrew their complaint when they returned to Nicaragua.)

Serrano got off the New York State Thruway around Saugerties and stopped at a gas station. Upon resuming the journey, Serrano missed the southbound entrance to the Thruway. He pulled over to the road's shoulder and prepared to make a U-turn.

Defendant Roberta Sheldon, a New York State Trooper, noticed the Dodge swerve before pulling over. Her suspicions aroused, she parked her patrol car behind the Dodge and walked up to the driver's side of the car. She asked Serrano if he needed assistance. Serrano, who speaks limited English, told her he was trying to get back on the Thruway. Trooper Sheldon asked to see his driver's license and vehicle registration. Serrano could find neither. During this exchange, Cook served as translator when necessary.

Trooper Sheldon noticed that the Dodge bore California license plates. An on-site computer check revealed that the plates were registered to a Buick and had expired. She opened the two front doors of Serrano's car to find a VIN, which is usually etched on a plate affixed to the dashboard or to one of the front doors. She could not find one.

Trooper Sheldon asked Serrano about the Dodge. The parties dispute what happened next. According to Cook, Serrano replied that he owned it, and that he had bought it at an auction. According to Sheldon, Cook responded that Serrano borrowed the car from a friend in New York City.

Trooper Sheldon then explained that she would have to take all of them to the police station because the car did not have valid license plates or a VIN. Cook asked her to just let them go, but she refused, saying that the vehicle could be stolen, and, in any event, at least one felony (possession of a vehicle with no VIN) had been committed. So, with the assistance of two more patrol cars, Trooper Sheldon transported Cook and the Serrano family (three adults and a baby) to the Saugerties Police Station. Serrano's Dodge was towed to an impoundment lot.

At the police station, Trooper Sheldon met fellow Trooper Nelson Saldana, who spoke fluent Spanish. She briefed Trooper Saldana about the situation, and asked him to find out who owned the Dodge. Trooper Sheldon then arranged to have George Hass, a Department of Motor Vehicles inspector, comb the Dodge for a VIN.

While Sheldon was on the phone, Trooper Saldana took Serrano's wife into an interrogation room and asked her who owned the Dodge. Her response is the subject of disagreement: the Troopers claim that she said she was unsure whether her husband had borrowed the car or was going to purchase it; Cook maintains that she told Trooper Saldana that her husband had bought the car at an auction.

Trooper Saldana then brought Serrano into a room for questioning. Here again, the parties' versions differ. According to the Troopers, Serrano said he borrowed the car. According to Cook, he overheard Serrano reiterate to Trooper Saldana that he had bought the car at an auction.

During Serrano's questioning, Cook sat in the hallway right outside the interrogation room. When a police officer told Cook that they would all be arrested, Cook then called out to Serrano in Spanish, "You are being arrested. You have a right to a lawyer. You

have a right to remain silent and I think that you should ask for a lawyer now." (Trooper Sheldon overheard Cook.) Trooper Saldana then brought Serrano out of the room, and took Cook himself inside.

Again, there is a controversy as to what happened next. According to the Troopers, Trooper Saldana asked Cook whether he knew who owned the Dodge. Cook said no, and demanded an attorney. Trooper Saldana then asked Cook why he was being uncooperative, to which Cook replied that he felt he had a right to an attorney.

By Cook's account, Trooper Saldana was not nearly so gracious. According to Cook, Trooper Saldana sneered, "Do you want to play hardball with us? Do you want to lawyer up? We will arrest all of you." Cook tried to calm Trooper Saldana by saying that he was not trying to cause trouble, but wanted to advise Serrano about his rights because Serrano was unfamiliar with American law. Trooper Saldana then told him that everyone would be arraigned because of Cook's conduct, and that Cook would not be able to make bail.

After this unpleasantry, Trooper Saldana told Trooper Sheldon that Cook and the Serranos did not want to cooperate. The two Troopers made the crucial decision to put Cook and the three other adults under "formal arrest" for knowingly possessing a vehicle that had no VIN, a felony under New York law. The Troopers drove the occupants 15 miles to State Police barracks in the town of Hurley for processing.

Meanwhile, George Hass, the inspector from the Department of Motor Vehicles, had finally found some faded handwriting on the Dodge's windshield. Hass reconstructed the Dodge's VIN from this handwriting, traced the number, and learned that the Dodge was not stolen.

At the Hurley barracks, Cook, Serrano, Serrano's wife and Serrano's mother-in-law were placed in separate cells, advised of their rights, fingerprinted and photographed. At some point, according to Cook, Inspector Hass told Cook that he was now aware that the car was not stolen, and that "there would be no problem" if Cook had not opened his

mouth about lawyers. Hass apparently never told Troopers Sheldon or Saldana that the car was not stolen.

Both Troopers Sheldon and Saldana assisted in processing Cook and the other three adults. According to Cook, Trooper Saldana showed him Serrano's signed acknowledgment that he had read and understood his rights, and said to Cook, "See, now this is all nice and legal. Are you satisfied now?"

Troopers Sheldon and Saldana then took Cook and the Serrano family to the Hurley Town Court. The town justice arraigned the four adults on felony charges of knowing possession of a car with no VIN. He set bail for Cook and Frank Serrano at $5,000 each, and released Serrano's wife and mother-in-law on their own recognizance. Cook and Serrano remained in custody for nearly two days, at which time they made bail. Thereafter, the felony VIN charges were dropped against everyone, and Serrano was charged only with traffic misdemeanors.

Cook sued Troopers Sheldon and Saldana in the Southern District of New York under section 1983, alleging false arrest, malicious prosecution, and malicious abuse of process. He claimed that the Troopers arrested him without probable cause because they were outraged that he should counsel Serrano to keep silent and request a lawyer.

Troopers Sheldon and Saldana moved for summary judgment on the ground of qualified immunity. They argued that it was reasonable to arrest Cook based on the limited facts available to them at the time: (1) they did not know who owned the vehicle; (2) the car did not have a VIN; (3) Serrano did not have a driver's license or car registration; and (4) the occupants gave conflicting responses about who owned the car.

In a three-paragraph order, the district court denied the Troopers' motion, finding that material issues of fact existed regarding the reason for Cook's arrest. The court stated that "[i]f plaintiff was arrested in retaliation for the exercise of his First Amendment rights, the defense of qualified immunity is unavailable."

The Troopers now appeal.

## DISCUSSION

Cook pleads three causes of action under section 1983: (1) false arrest; (2) malicious prosecution; and (3) malicious abuse of process. The Troopers argue that the district court should have dismissed all three claims by summary judgment on the ground of qualified immunity. Their fundamental position is that, so long as they had probable cause to believe that Cook violated the VIN statute, they are entitled to qualified immunity as a matter of law, regardless of their motives. We disagree.

While the denial of summary judgment is not ordinarily appealable, there is an exception when the district court rejects the qualified immunity defense on motion for summary judgment. *See Golino v. City of New Haven,* 950 F.2d 864, 868 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). In these cases, "we have jurisdiction to review appellants' immunity defense only to the extent that it can be decided as a matter of law." *Id.* Accordingly, we are limited to examining solely whether the facts, viewed in the light most favorable to Cook, support a claim that the Troopers violated his clearly established rights. If Cook's claim is supported, qualified immunity is unavailable. *See Mitchell v. Forsyth,* 472 U.S. 511, 528 n. 9, 105 S.Ct. 2806, 2816 n. 9, 86 L.Ed.2d 411 (1985).

### I. *False arrest*

It is now black letter law that a common law tort is not cognizable under section 1983 unless it also results in a violation of federal constitutional or statutory law. *See, e.g., Easton v. Sundram,* 947 F.2d 1011, 1016 (2d Cir.1991) (noting that state law tort does not always rise to level of constitutional violation), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). The tort of false arrest supports a claim against state police under section 1983 because it violates the Fourth Amendment. *See Posr v. Doherty,* 944 F.2d 91, 97, 98 (2d Cir.1991). The plaintiff will not recover, however, if the defendants are shielded by qualified immunity.

Qualified immunity protects state officials from civil liability for damages when

they perform discretionary functions and their conduct does not violate any clearly established federal statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For this purpose, "[a] right is 'clearly established' if it meets one of three tests: (1) it is defined with reasonable clarity; or (2) the Supreme Court or this Circuit has affirmed its existence; or (3) a reasonable defendant would understand from existing law that his acts were unlawful." *Jeffries v. Harleston,* 21 F.3d 1238, 1248 (2d Cir.), *vacated on other grounds and remanded,* —— U.S. ——, 115 S.Ct. 502, —— L.Ed.2d —— (1994).

It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause. *See Soares v. State of Connecticut,* 8 F.3d 917, 920 (2d Cir.1993); *Golino,* 950 F.2d at 870.

■ If an officer arrests the plaintiff without probable cause, the officer is, nevertheless, immune if he can show either that: (1) it was objectively reasonable for him to believe he had probable cause; or (2) officers of reasonable competence could disagree whether probable cause existed. *See Golino,* 950 F.2d at 870. If the officer makes either showing, he is entitled to qualified immunity, regardless of his underlying motives for arresting the plaintiff. *See Mozzochi v. Borden,* 959 F.2d 1174, 1179–80 (2d Cir.1992); *Magnotti v. Kuntz,* 918 F.2d 364, 367–68 (2d Cir.1990). *See also Oliveira v. Mayer,* 23 F.3d 642, 649 (2d Cir.1994) (There is qualified immunity when the officer "reasonably believes that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted.").

Turning to the facts before us, we must determine whether, as a matter of law, it was objectively reasonable for Troopers Sheldon and Saldana to believe they had probable cause to arrest Cook, or, at least, that officers of reasonable competence could disagree over the issue. *See Mozzochi,* 959 F.2d at 1179.

■ Cook alleges, and the defendants do not dispute, that the arrest occurred after Cook yelled to Serrano that he should assert his rights. We thus presume, as the parties seem to, that the custodial period preceding this event was consensual. The Troopers argue that it was reasonable to arrest Cook, as well as the other passengers, for violating the VIN statute because the Troopers did not know who owned the car. (Significantly, they do *not* argue that they had probable cause to arrest the car's occupants for possession of a stolen vehicle.) The Troopers contend that, being unsure who the owner was, it was reasonable to arrest every adult passenger as a potential owner. This is the nub of the case.

■ We find the Troopers' position unsupportable. A person violates the VIN statute by "*knowingly* possess[ing] . . . a vehicle or vehicle part from which a [VIN] plate has been removed. . . ." N.Y. Penal Law § 170.70(2) (emphasis added). Knowing possession means what it says: the person must know the vehicle is missing the VIN plate. *See People v. Von Werne,* 41 N.Y.2d 584, 589, 394 N.Y.S.2d 183, 187, 362 N.E.2d 982, 985–86 (1977); *People v. McCabe,* 157 Misc.2d 373, 596 N.Y.S.2d 1021, 1022 (City Crim.Ct. 1993). Knowledge is presumed only when the person possesses five vehicles or vehicle parts that are missing VIN plates. *See* N.Y.Penal Law § 170.71.

Historically, the VIN statute was "designed primarily to provide the police with means of addressing those who run 'chop shops' or sell their wares." *McCabe,* 596 N.Y.S.2d at 1023. Hence, car dealers are the usual targets of prosecution under the VIN statute. *See, e.g., Von Werne,* 41 N.Y.2d at 589, 394 N.Y.S.2d at 187, 362 N.E.2d at 986 (defendant was an automotive mechanic who bought the car); *People v. Sullivan,* 137 Misc.2d 909, 522 N.Y.S.2d 758, 759 (Sup.Ct. 1987) (defendant was a licensed automobile dismantler). It is not inconceivable, of course, that a car owner might be prosecuted under the VIN statute, but it would have to be proved that he knew the VIN plate was missing. *See, e.g., McCabe,* 596 N.Y.S.2d at 1023 (dismissing prosecution of car owner

because accusatory instrument alleged no facts from which to infer *scienter* ).

If Cook is believed, Serrano and Serrano's wife separately told the Troopers that Serrano, who was driving the car, owned it. Thus, Serrano would be the only person the Troopers could reasonably believe to own the Dodge. There would be no basis to believe that Cook, a mere passenger, knew the car was missing a VIN plate. That Serrano could not prove his ownership to Trooper Sheldon does not metastasize into probable cause to arrest all the passengers. If Cook is right that the Troopers employed a "shoot 'em all, and let God sort 'em out" arrest psychology, their actions were abhorrent to the Fourth Amendment.

 For these reasons, as to the false arrest claim, the Troopers are not entitled to qualified immunity as a matter of law; and the district court properly denied their motion for summary judgment.

## II. *Malicious prosecution*

Section 1983 liability may also be anchored in a claim for malicious prosecution, as this tort "typically implicates constitutional rights secured by the fourteenth amendment, such as deprivation of liberty." *Easton,* 947 F.2d at 1017. To evaluate the Troopers' right to qualified immunity, we must again examine whether the malicious prosecution claim alleges a violation of Cook's clearly established federal rights. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. We find that it does.

 Though section 1983 provides the federal claim, we borrow the elements of the underlying malicious prosecution tort from state law. *See Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34, 39 (2d Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). In New York, a plaintiff alleging malicious prosecution must show: (1) the defendant commenced a criminal proceeding against him; (2) the proceeding ended in the plaintiff's favor; (3) the defendant did not have probable cause to believe the plaintiff was guilty of the crime charged; and (4) the defendant acted with actual malice. *See Martin v. City*

*of Albany,* 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614, 364 N.E.2d 1304, 1306–07 (1977).

On the facts pled by Cook, he has demonstrated these elements. (1) The Troopers commenced a criminal proceeding against him by formally charging Cook with violating the VIN statute and having him arraigned before the town justice. *See Carl v. Ayers,* 53 N.Y. 14, 17 (1873) (warrantless arrest followed by information and preliminary hearing before a magistrate constitutes commencement). (2) The proceeding ended in Cook's favor when the charges against him were dismissed. *See Loeb v. Teitelbaum,* 77 A.D.2d 92, 100–01, 432 N.Y.S.2d 487, 493–94 (1980) (formal abandonment by prosecutor constitutes favorable termination). Finally, as discussed above, (3) the Troopers lacked probable cause, and, (4) if Cook is to be believed, they were driven by vengeance. *See Nardelli v. Stamberg,* 44 N.Y.2d 500, 502–03, 406 N.Y.S.2d 443, 444–45, 377 N.E.2d 975, 976–77 (1978) (spite satisfies actual malice requirement).

 Taking Cook's allegations to be true, it is unquestionable that these acts violated Cook's clearly established procedural due process rights: No reasonable law enforcement officer could think it lawful to charge a person with a crime without probable cause and for the sole purpose of retaliation. *See Jeffries,* 21 F.3d at 1248 (a right is clearly established if "a reasonable defendant would understand from existing law that his acts were unlawful"); *Mozzochi,* 959 F.2d at 1179; *Magnotti,* 918 F.2d at 367. Thus, we reject the Troopers' claim that they are immune as a matter of law from liability for malicious prosecution.

## III. *Malicious abuse of process*

As a preliminary matter, we note that this Circuit has not specifically decided whether the tort of malicious abuse of criminal process will support a claim under section 1983. *See Easton,* 947 F.2d at 1016 (state law torts committed by state officials do not always rise to level of constitutional violation). True, in *Spear v. Town of West Hartford,* we stated broadly that "section 1983 liability . . . may not be predicated on a claim of malicious abuse of process." *See* 954 F.2d 63, 68 (2d

Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 66 (1992). *Spear*, however, involved a section 1983 claim for malicious abuse of *civil* process, and dismissed it because the Troopers had not violated a federal right. *Id.* (citing *Havas v. Thornton*, 609 F.2d 372, 376 (9th Cir.1979) (plaintiff has no section 1983 action for defamation because no federal civil right is offended)). The *Spear* court was not called upon to consider whether a section 1983 claim of malicious abuse of *criminal* process, where the complaint alleges a deprivation of a constitutional right, states a cognizable claim.

The distinction between civil and criminal abuse of process is critical for section 1983 purposes. *Cf. Easton*, 947 F.2d at 1018 (while malicious criminal prosecution implicates constitutional right not to be deprived of liberty, same is not automatically true for malicious civil prosecution). In the criminal context, malicious abuse of process is "by definition a denial of procedural due process." *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir.1977).

■ The torts of malicious prosecution and abuse of process are closely allied. While malicious prosecution concerns the improper issuance of process, "[t]he gist of abuse of process is the improper use of process after it is regularly issued." 2 Committee on Pattern Jury Instructions, Association of Supreme Court Justices, New York Pattern Jury Instructions § 3:51 at 816 (1968). Since this Circuit already recognizes malicious prosecution claims under section 1983, *see White v. Frank*, 855 F.2d 956, 961 n. 5 (2nd Cir.1988), it should extend that recognition to the tort's close cousin, abuse of criminal process. Other circuits have done so. *See, e.g., Rose v. Bartle*, 871 F.2d 331, 350 n. 17 (3d Cir.1989) (recognizing section 1983 claim for malicious abuse of criminal process); *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir.1981) (section 1983 action for malicious abuse of process must be based on the deprivation of a constitutional right). We, therefore, hold that section 1983 liability may lie for malicious abuse of criminal process.

We next examine whether Cook's abuse of process claim alleges a violation of Cook's clearly established rights under federal law.

■ As with malicious prosecution, we turn to state law to find the elements of the malicious abuse of process claim. *See Raysor*, 768 F.2d at 39. *See generally Wilson v. Garcia*, 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985) (state law is authoritative source of elements of section 1983 cause of action). In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324, 1326 (1984); *Board of Educ. of Farmingdale v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 642, 343 N.E.2d 278, 282 (1975).

■ Here, the Troopers clearly employed criminal process against Cook by having him arraigned on charges of illegal possession of a car with no VIN. This arraignment caused Cook to be held in custody. *See Mormon v. Baran*, 35 N.Y.S.2d 906, 909 (Sup.Ct.1942) (legal process means that a court issued the process, and the plaintiff will be penalized if he violates it). Cook alleges that the Troopers did this to harm Cook, as retribution for advising Serrano. *See Board of Educ. of Farmingdale*, 38 N.Y.2d at 404, 380 N.Y.S.2d at 642–43, 343 N.E.2d at 283 ("collateral objective" includes retribution).

Procedural due process forbids the use of legal process for a wrongful purpose. *See Torres v. Superintendent of Police*, 893 F.2d 404, 410 (1st Cir.1990) (procedural due process violations include deprivations "of liberty by a distortion and corruption of the processes of law"). If Cook's malicious abuse of process allegations are true, then, the Troopers violated his clearly established due process rights. Thus, we reject the Troopers' contention that they are entitled to qualified immunity as a matter of law. The district court properly denied summary judgment on the malicious abuse of process claim.

## CONCLUSION

For the above reasons, we affirm the district court's denial of summary judgment.

AFFIRMED.