223 F.3d 141 (2nd Cir. 2000)
 BONIDE PRODUCTS, INC., Plaintiff-Appellant,
v.
JOHN CAHILL, Individually and as Commissioner of The Department of Environmental Conservation of The State of New York and DAVID CLARKE, Defendants-Appellees.
 No. 99-9107
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 March 31, 2000, Argued
April 25, 2000, Decided
August 22, 2000, Filed
 
 [Copyrighted Material Omitted]
 RICHARD J. BRICKWEDDE, Green & Seifter, Attorneys, P.C., Syracuse, N.Y., for Plaintiff-Appellant.
 JOHN J. SIPOS, Assistant Attorney General, Eliot Spitzer, Attorney General of the State of New York, (Peter H. Schiff, Deputy Solicitor General; Peter G. Crary, William E. Storrs, Assistant Solicitors General; Lawrence A. Rappoport, Associate Attorney, on the brief); Albany, N.Y. for Defendants-Appellees.
 Before: OAKES and WALKER, and KEITH,* Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Bonide Products, Inc. ("Bonide") appeals from the August 23, 1999 order of the United States District Court for the Northern District of New York, Frederick J. Scullin, Jr. (District Judge), granting defendants' motion for summary judgment, denying Bonide's cross-motions for summary judgment and to amend its complaint, and declining to exercise pendent jurisdiction over Bonide's remaining state law claims. We affirm.[1]
 
 
 2
 This case arises out of a fire at a Bonide pesticide manufacturing plant in the village of New York Mills. Following the fire and an investigation by defendant-appellee David Clarke, an Environmental Conservation Officer ("ECO") with the Department of Environmental Conservation ("DEC"), Bonide was issued an Administrative Conservation Appearance Ticket ("ACAT") offering to resolve issues of liability resulting from the fire. The ACAT failed to produce the desired settlement and Bonide was criminally charged in state court. The charges were subsequently dismissed.
 
 
 3
 Following dismissal of the criminal charges, Bonide filed the instant suit, alleging (1) malicious prosecution by Clarke, in violation of both 42 U.S.C. 1983 and state law; (2) violations of Bonide's Fifth and Fourteenth Amendment rights by Clarke and his supervisor, defendant-appellee John Cahill, as a result of the ACAT form; and (3) various state law causes of action. Bonide also sought injunctive and declaratory relief on grounds that the ACAT form is unconstitutional.
 
 
 4
 The district court found that Clarke and Cahill were entitled to qualified immunity and dismissed the 1983 claims against them. The district court further found that Bonide lacked standing to challenge the constitutionality of the ACAT form as Bonide never appeared nor paid a fine pursuant to the form. The district court also denied Bonide's motion to amend its complaint and plead a Fourth Amendment violation. Reviewing the district court's summary judgment order de novo, see Eagleston v. Guido, 41 F.3d 865, 870 (2d Cir. 1994), we agree with the district court's conclusions.
 
 BACKGROUND
 
 5
 We recite only those facts relevant to this appeal, viewed in the light most favorable to Bonide. See Corcoran v. New York Power Auth., 202 F.3d 530, 533 (2d Cir. 1999). We will, however, review in some detail the events leading up to the instant dispute.
 
 
 6
 On February 29, 1996, Clarke received a telephone call from his sister-in-law, who lives near the Bonide pesticide manufacturing plant, reporting a fire at the plant. Clarke immediately telephoned a police dispatcher, identified himself as an ECO, and asked what was happening. The dispatcher told Clarke that there had been a fire and explosion at the plant, and asked him if he knew what chemicals might be present. Clarke informed the dispatcher that Bonide manufactured pesticides at which point the dispatcher asked if Clarke, given his expertise, would come to the scene to assist the fire department. Although Clarke had never before responded to a fire in his capacity as an ECO, he had been trained to do so. Following the police dispatcher's request, Clarke called his superior officer who gave Clarke permission to respond.
 
 
 7
 There is some disagreement between the parties as to the conditions that Clarke encountered when he arrived at the scene. Clarke's notes reflect that smoke was coming from the building, venting out of the heat system. Bonide, however, suggests that its plant was designed to be a self-contained, "zero discharge wastewater facility" with vacuum seals to prevent air from escaping without first being filtered through carbon. Bonide claims that the fire was immediately contained and that no smoke escaped from the building. There is, however, no dispute that water runoff from the sprinklers collected in the basement and that water was also seen running out of a loading dock. But Bonide claims that any sprinkler runoff was effectively contained in the impermeable basement and that any water pouring out of the loading dock would have been clean city water, uncontaminated by chemicals in the plant. Viewing the facts in the light most favorable to Bonide, we must accept their version of the events as true for purposes of our review.
 
 
 8
 Even if we must presume that Clarke did not actually observe fire, smoke, or contaminated water coming out of the building when he arrived, there is no genuine factual dispute about the actions Clarke took at the scene. Upon arriving, he reported to the local fire chief who told him that a "bad fire" had erupted at the plant and that the fire department was still unable to locate the source. The fire chief also told Clarke that he was considering evacuating the nearby village because of smoke. A Bonide employee provided Clarke with information indicating the presence in the plant of acetone, a highly flammable chemical, exposure to which poses significant health risks. Clarke recommended to the fire chief that he clear the building, and all of the firefighters were ordered to put on oxygen masks so as not to risk inhaling the chemicals. The fire was ultimately contained without further incident relevant to this appeal.
 
 
 9
 In the week following the fire, Clarke, along with other DEC employees, began to investigate the fire. They concluded that it started when Bonide employees mixed flammable chemicals near a stove's open flame. Clarke discovered that Tom Wurz, a Bonide corporate officer, had been advocating the replacement of the stove for some time as Wurz considered it a safety hazard. Clarke also received the results of tests conducted on the standing water in the basement; the water tested positive for acetone.
 
 
 10
 At about this time, Clarke met with a local Assistant District Attorney ("ADA"), asking if there was a basis for a criminal prosecution. The ADA responded that she would prefer it if the DEC pursued an administrative settlement. Shortly thereafter, Clarke, with his supervisor's permission, issued the ACAT to Bonide seeking either $ 25,000, or $ 10,000 and a guilty plea to a misdemeanor charge, in exchange for settling the matter.
 
 
 11
 Bonide's attorney contacted the DEC seeking an adjournment, which Cahill apparently granted. Clarke nevertheless informed the ADA that Bonide failed to appear and the ADA authorized Clarke to file an Environmental Conservation Appearance Ticket ("ECAT"), formally charging Bonide under Environmental Conservation Law 71-2711(3), which provides that a person is guilty of the misdemeanor of endangering public health when "he knowingly or recklessly engages in conduct which causes the release of a substance hazardous to public health, safety or the environment." Id. At the criminal trial, the state court dismissed the criminal charges on the merits because the court found no evidence of a release of any substance to the environment.
 
 DISCUSSION
 
 12
 Following the termination of the criminal case in their favor, Bonide filed the instant action. We must first decide the application of qualified immunity as to each of Bonide's causes of action.
 
 
 13
 A defendant is entitled to qualified immunity in a 1983 action when "no reasonable jury" viewing the evidence in the light most favorable to the plaintiff "could conclude that it was objectively unreasonable for the defendant . . . to believe that he was acting in a fashion that did not clearly violate an established federally protected right." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotation marks omitted). We turn first to the only close question in this case: whether Clarke was entitled to qualified immunity on Bonide's 1983 claim for malicious prosecution.
 
 
 14
 While the right to be free from malicious prosecution is a clearly established right, "defendants may nevertheless enjoy qualified immunity if it was objectively reasonable for them to believe that their actions did not violate that right[]." Id. To prove a 1983 or state law claim of malicious prosecution, Bonide must establish that "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice." Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991). In addition, "in order to prevail . . . [on a claim based on malicious prosecution] under 1983, the plaintiff must show a violation of his rights under the Fourth Amendment." Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997). As it was objectively reasonable for Clarke to believe that he had probable cause to file an ECAT against Bonide, we need not consider the other elements of the malicious prosecution claim.
 
 
 15
 The specific question we decide in Clarke's favor is whether he reasonably believed that he had probable cause to suspect Bonide of violating ECL 71-2711(3). The elements of ECL 71-2711(3) are: (1) reckless conduct resulting in (2) the release of (3) a hazardous substance. We have no doubt about the applicability of the first and last elements. The fire resulted from mixing flammable chemicals near a stove's open flame. Especially considering Wurz's concession that he had previously warned Bonide about the danger of using the stove, it was objectively reasonable for Clarke to conclude that Bonide's conduct was reckless. Moreover, acetone is a hazardous substance. The only substantial question Bonide raises is whether it was objectively reasonable for Clarke to believe that a release had occurred.
 
 
 16
 On appeal, Bonide emphasizes the ultimate dismissal of the state criminal charges on grounds that there was no evidence of an actual release into the environment. But this argument misconstrues the nature of the qualified immunity defense. The test is not whether a release in fact occurred. Rather, the test we employ, as stated above, is whether it was reasonable for Clarke to believe that a release had occurred.
 
 
 17
 First, and most importantly, it is undisputed that there was a fire at the plant. We must accept, for purposes of this appeal, Bonide's claims regarding the success of its building in containing the fire. But whether or not the "negative air pressure" within the building actually prevented any release into the environment, it was reasonable for Clarke, who was unaware of the plant's safety features, to believe that an explosion and fire would have resulted in such a release.
 
 
 18
 Moreover, it is also undisputed that the standing water in the basement of the plant contained acetone and that water was seen pouring out of the loading dock area of the plant during the fire. Even if the water coming out of the plant was, in fact, uncontaminated, Clarke reasonably concluded that he had probable cause to charge Bonide with the release of a hazardous substance. And "because the focus of the qualified immunity inquiry is on the objective reasonableness of the defendant's actions, motivation does not come in to play." Sound Aircraft Servs., Inc. v. East Hampton, 192 F.3d 329, 334 (2d Cir. 1999). Thus, Clarke is entitled to qualified immunity regardless of Bonide's allegations of malicious motivation.
 
 
 19
 Bonide's remaining arguments on appeal are more easily resolved. We agree with the district court that Clarke and Cahill enjoyed qualified immunity for their use of the ACAT form. The DEC has used the ACAT form for years and it has never been found to violate a clearly established constitutional right.
 
 
 20
 Bonide's remaining federal claims are for injunctive relief barring the DEC's use of the ACAT and a declaration of its unconstitutionality. Bonide argues that the ACAT deprives people of property without due process of law in violation of the Fifth and Fourteenth Amendments. The ACAT looks substantially like an ECAT, but contains the following language:
 
 
 21
 This notice is to give you the opportunity to settle this matter administratively at the above location and time, to be held before the presiding officer in Law Enforcement unless otherwise noted. Your failure to appear may result in criminal charges being filed, or an administrative "Notice of Hearing" being issued.
 
 
 22
 The district court held that Bonide lacked standing to assert these claims. We agree. Bonide did not suffer the kind of actual harm required by Article III of the United States Constitution. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992) ("The plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.") (internal citations and quotation marks omitted). Since Bonide was not actually coerced into paying the money requested by the DEC in the ACAT, it does not now have standing to argue that it was deprived of property based upon the ACAT's use in violation of the Fifth and Fourteenth Amendments. Moreover, because the ACAT neither initiated a criminal proceeding, nor seized Bonide's property or impaired any cognizable liberty interest, the district court did not err by refusing to permit Bonide to amend its pleadings to allege a Fourth Amendment violation.
 
 
 23
 Absent a remaining basis for federal jurisdiction, the district court also did not err by dismissing the remaining state law claims. The judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Damon J. Keith, of the United States Court of Appeals for the Sixth Circuit, sitting by designation.
 
 
 [1]
 This case was decided on April 25, 2000, by summary order. Upon the motion of the Government to publish our opinion, we withdraw our prior summary order to be replaced by this opinion.