Anthony **DICKERSON**, et al., Plaintiff,

v.

**MONROE COUNTY SHERIFF'S DEPARTMENT, et al.,**
Defendants.

**No. 96–CV–6235L.**

United States District Court,
W.D. New York.

Sept. 26, 2000.

T. Andrew Brown, Brown and Hutchinson, Rochester, NY, for Anthony Dickerson, plaintiff.

Howard A. Stark, Dep. County Attorney, Monroe County Attorney, Rochester, NY, for Leon Hill, Deputy, Monroe County Sheriff's Deputy, Individually and in his official capacity, defendant.

Charles D. Steinman, New York State Attorney General, for Dombrowski, Officer, New York State Police Individually and in his official capacity, defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

### INTRODUCTION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff, Anthony Dickerson ("Dickerson"), brought claims of malicious prosecution, false arrest, false imprisonment, and malicious abuse of process against defendants Leon Hill, ("Hill") of the Monroe County Sher-

iff's Department, and Allen Dombroski ("Dombroski"), of the New York State Police. Plaintiff's wife, Mary Dickerson, also brings a loss of consortium claim under New York law. Defendant Dombroski now moves for summary judgment.

## FACTS

The events that led to this action began on June 14, 1994, when defendant Dombroski telephoned plaintiff at his home and stated that one "Mr. Dickerson" or "Mr. MacDonald" had called the television show "America's Most Wanted" with information concerning a missing child, Kali Ann Poulton. Dickerson Aff., ¶ 2. Plaintiff informed Dombroski that he did not make the phone calls and did not have any information about the missing child. Id. at ¶ 3.

Later that day, defendants Hill and Dombroski went to plaintiff's home to question him further. Plaintiff claims that he denied making the phone calls and told the officers to leave his property. Dickerson Aff., ¶ 11. After an unpleasant exchange with Dombroski, plaintiff returned to his backyard where he had been removing maple tree roots. Id. at ¶¶ 12–13. When he picked up a sledgehammer to continue work, one of the defendants ordered him to put it down. Id. at ¶ 14. Plaintiff complied by dropping the sledgehammer to his side and turning around, and the defendants left soon after. Id. at 14–15.

Immediately following the incident, Dombroski and Hill discussed filing a menacing charge against plaintiff. Dombroski Dep., pp. 151–52, 161. Dombroski decided not to act immediately, but intended to arrest plaintiff at a later time. Id. at 151–56. Dombroski and Hill then met with their superiors from the County and the State. Id. at 162–64. During the meeting, the officers concluded that since the County intended to file charges, Dombroski would not file duplicate charges but would serve as a witness. Id. at 163, 168–69. Following the discussion, both Dombroski and Hill filed a report with the Irondequoit Police Department ("Irondequoit") indicating that an "officer safety

issue" had occurred in that jurisdiction. Id. at 179–80.

The next day, June 15, Dombroski and Hill met with the assistant district attorney to discuss whether the additional charge of obstructing governmental administration ("OGA") should be lodged against plaintiff. Dombroski Dep., pp. 222–27. During the meeting, Dombroski spoke with plaintiff on the telephone. Id. at 227. Plaintiff informed Dombroski that he planned to file a harassment complaint. Id. at 229–30. At the conclusion of the meeting, the assistant district attorney indicated that the County would file a menacing and an OGA charge. Id. at 232–33. The three also discussed obtaining a warrant for plaintiff's arrest. Id.

That same day, plaintiff contacted Irondequoit about filing a complaint against Hill and Dombroski. Dickerson Aff. ¶ 16. Irondequoit Officer Dennis Saeva ("Saeva") went to plaintiff's home and informed him that defendants had filed a report stating that plaintiff had threatened them with a sledgehammer. Dickerson Aff., ¶ 17. Saeva convinced plaintiff not to file a complaint and suggested that nothing would come of the defendant's report. Dickerson Aff., ¶ 20.

On June 24, Hill and another officer arrested plaintiff at his place of employment. Dickerson Dep., p. 23. Plaintiff alleges that he was transported to the Monroe County Sheriff's Department and detained in a cell for four hours, then spent another four hours in a "holding tank" at the Irondequoit Police Department until his arraignment.

At the criminal trial, Dombroski testified against plaintiff. Brown Aff., ¶ 33. The court dismissed the charge of OGA sua sponte. Id. A jury acquitted plaintiff of the menacing charge after five minutes of deliberation. Id. at ¶ 34.

Plaintiff subsequently brought this action, alleging that Dombroski and Hill violated his constitutional rights by instituting and perpetuating false and fabricated

charges. Dombroski moves for summary judgment on the grounds that he was not personally involved in the alleged deprivation of plaintiff's constitutional rights because he "did not request, solicit, or importune" anyone to take legal action, but merely provided testimony. Plaintiff's Memorandum of Law, p. 1.

## DISCUSSION

Summary Judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Rule 56(e), a party opposing the motion for summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." This Court's function in deciding a motion for summary judgment "is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir. 2000). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

### A. Malicious Prosecution Claim

■ "The tort of malicious prosecution protects the personal interest of freedom from unjustifiable litigation." *Broughton v. State,* 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975). To prove a malicious prosecution claim, a plaintiff must show: "(1) [that] the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the crim-

inal proceeding was instituted with actual malice." *Bonide Products, Inc. v. Cahill,* 223 F.3d 141, 144 (2d Cir.2000).

■ Dombroski argues that he was not involved in the decision to commence the criminal charges against plaintiff. Thus, this cause of action must be dismissed. It is true that civilians who merely report a crime are generally shielded from liability for the tort of malicious prosecution. *See Quigley v. City of Auburn,* 267 A.D.2d 978, 980, 701 N.Y.S.2d 580 (4th Dept.1999). However, the question of Dombroski's involvement in the commencement of the criminal action against plaintiff is not as settled as plaintiff suggests.

■ Essentially, Dombroski argues that since Hill prepared and signed the charging information and the Monroe Country Sheriff's office ultimately initiated the charges against plaintiff, Dombroski. cannot be found to have initiated the charges. However, the record suggests that Dombroski was actively involved in the County's case against Dickerson. The State chose not to charge Dickerson only because . it did not want to "lay duplicate charges." Dombroski Dep., p. 165. Dombroski was to "assist the County Sheriffs as a witness." *Id.* Both Hill and Dombroski filed a report with Irondequoit concerning plaintiff's alleged conduct, and both defendants met with the assistant district attorney concerning the charges.

Moreover, it is plaintiff's contention that the menacing and OGA charges brought against him were based entirely on facts fabricated by Dombroski and Hill. Viewing the facts in the light most favorable to plaintiff, Dombroski cannot be . insulated from liability here. *See Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 130 (2d Cir.1997) (Although additional charges were added by the district attorney, a jury could find that defendant "played a role in initiating the prosecution by preparing the alleged false confession and forwarding it to prosecutors."); *White v. Frank,* 855 F.2d 956 (2d Cir.1988) (Police officers who

falsely testify in front of a grand jury may be liable for malicious prosecution, in spite of the public prosecutor's role in advancing charges); *Komlosi v. Fudenberg,* 2000 WL 351414, at *10 (S.D.N.Y. Mar.31, 2000) ("Where, as here, a defendant willfully and maliciously causes false information to be presented to prosecuting officials, the prosecutor's decision, based on the false information, will not shield the source from liability for malicious prosecution.").

## B. False Arrest and False Imprisonment Claims

■■■ Claims for false arrest and false imprisonment are essentially the same causes of action. *See Weyant v. Okst.* 101 F.3d 845, 853 (2d Cir.1996) ("The common law tort of false arrest is a species of false imprisonment.") (quoting *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995); *Posr v. Doherty,* 944 F.2d 91, 96 (2d Cir.1991) (Under New York law, "the tort of false arrest is synonymous with that of false imprisonment.") (citing *Jacques v. Sears, Roebuck & Co.,* 30 N.Y.2d 466, 473, 334 N.Y.S.2d 632, 285 N.E.2d 871 (1972)). In order to establish a false arrest claim, a plaintiff must show that: "1) the defendant intended to confine [the plaintiff], 2) the plaintiff was conscious of the confinement, 3) the plaintiff did not consent to the confinement, and 4) the confinement was not otherwise privileged." *Weyant,* 101 F.3d at 853 (citing *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)).

Dombroski contends that he was not present when plaintiff was arrested, and that he had no role in what was another law enforcement agency's decision to make the arrest. Essentially, Dombroski's argues that, like a civilian, he simply provided information to the arresting agency, which then made its own determination concerning arrest.

■■■ While it is uncontested that Dombroski did not sign the criminal information that led to plaintiff's arrest and that he was not present when plaintiff was arrested, plaintiff contends that Dombroski

was directly involved in determinating what charges would be brought against him and in the decision as to which agency would bring the criminal charges, the County or the State.

■■■ For the same reasons discussed above, I am unable to say, as a matter of law, that Dombroski cannot be liable for the tort of false arrest or false imprisonment. While it is true that individuals providing information to a law enforcement officer may be insulated from that officer's independent decision to arrest, such an analogy cannot be drawn based on this record. *See Fowler v. Robinson,* 1996 WL 67994, at *5–6 (N.D.N.Y. Feb.15, 1996) (social workers potentially liable for false arrest where question existed as to whether they instigated the arrest); *Lopez v. City of N.Y.,* 901 F.Supp. 684, 688 (S.D.N.Y.1995) (Community board chairperson "who [was] not an arresting officer may be liable for false arrest if the defendant instigated an arrest by a police officer, knowing that there was no probable cause to believe that plaintiff committed a crime.").

## C. Malicious Abuse of Process Claim

■■■ Malicious abuse of process is "the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of process." *Board of Educ. of Farmingdale v. Farmingdale Union Free Dist.,* 38 N.Y.2d 397, 400, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975). Such a claim "lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir. 1994).

Dombroski argues that he did not personally employ any legal process against Dickerson, therefore, he cannot be held liable for malicious abuse of criminal process. For the same reasons discussed

above, the Court cannot determine Dombroski's lack of involvement as a matter of law.

Dombroski also argues that he is entitled to qualified immunity with respect to this claim because the Second Circuit did not determined that a cause of action existed for malicious abuse of criminal process until its decision in *Cook v. Sheldon,* decided approximately six months prior to the events at issue here. 41 F.3d 73 (2d Cir. 1994).

■■■■■ "Qualified immunity shields government officials from liability in their individual capacity if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lauro v. Charles,* 219 F.3d 202, 214 (2d Cir.2000) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "In the criminal context, malicious abuse of process is 'by definition a denial of procedural due process.'" *Cook,* 41 F.3d at 80 (citing *Jennings v. Shuman,* 567 F.2d 1213, 1220 (3d Cir.1977)). Thus, the deprivation alleged here is of a constitutional nature. A right is considered "clearly established" if: "(1) it is defined with reasonable clarity; or (2) the Supreme Court or this Circuit has affirmed its existence; or (3) a reasonable defendant would understand from existing law that his acts were unlawful." *Id.* at 78.

Dombroski appears to argue that this Court's inquiry concerning qualified immunity is limited to whether the Second Circuit has affirmed the application of the tort of malicious abuse of criminal process to a state actor's conduct prior to the events at issue here. Such an argument misstates the applicable law, and is contrary to Second Circuit precedent.

■■■ In *Cook,* the plaintiff alleged that law enforcement officers employed a criminal process against him in retaliation for encouraging another detainee to obtain legal counsel. The court rejected defendant's defense of qualified immunity, and held that if the plaintiff's "malicious abuse of process allegations are true, then, the [defendants] violated his clearly established due process rights." *Cook,* 41 F.3d at 80. Analogous to the claim in *Cook,* the gravamen of plaintiff's complaint is that Hill and Dombroski initiated and supported false charges against plaintiff. As the *Cook* court held, "[p]rocedural due process forbids the use of the legal process for wrongful purpose." *Id.* at 80. Thus, it cannot be said as a matter of law that Dombroski did not violate plaintiff's clearly established rights.

### D. Mary Dickerson's Cause of Action

In the sixth cause of action Mary Dickerson, Anthony Dickerson's wife, alleges a loss of consortium occasioned by the constitutional violation allegedly suffered by her husband. It is clear that Mrs. Dickerson has no separate constitutional claim, but she has properly pleaded a claim under New York State law for loss of consortium.

■■■ Although Mrs. Dickerson has not established an independent basis for federal jurisdiction, it is now clear under the provisions of 28 U.S.C. § 1367(a) that this Court has authority to exercise supplemental jurisdiction over her claim. *See Kirton v. Hassel,* 1998 WL 146701, at *9 (E.D.N.Y. March 25, 1998); *McCray v. Holt,* 777 F.Supp. 945, 947–48 (S.D.Fla. 1991).

### CONCLUSION

For the foregoing reasons, defendant Dombroski's motion for summary judgment (Dkt.# 25) is denied.

IT IS SO ORDERED.