Terrisina JACKSON individually & Kateenya Thomas as guardian of her minor Lee Jackson, Plaintiffs–Appellees,

v.

John A. JOHNSON, Commissioner of the New York State Division for Youth, Stephen Farkas, Director of the Louis Gossett, Jr. Residential Center, Defendants–Appellants,

Clarence Thomas, Jon Lackey, Gary Wood, Eric Warner, William Saphara, Youth Detention Aides at the Louis Gossett, Jr. Residential Center, Lilia Johnson, Nurse at the Louis Gossett, Jr. Residential Center, Shelly Auber-

tine, Youth Division Counselor at the Louis Gossett, Jr. Residential Center, individually and in their official capacities, Defendants.

Nos. 00–9305(L), 00–9333.

United States Court of Appeals, Second Circuit.

June 27, 2001.

**52**

Donald S. Thomson, Davidson & O'Mara, Elmira, NY, for appellant Johnson.

Victor Paladino, Ass't Sol. Gen., Albany, NY, for appellant Farkas.

Joan Magoolaghan, Koob & Magoolaghan, N.Y., NY, for appellees.

Present KEARSE, STRAUB, and SACK, Circuit Judges.

## SUMMARY ORDER

This cause came on to be heard on the record from the United States District Court for the Northern District of New York, and was argued by counsel.

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the order of said District Court be and it hereby is affirmed in part, and the appeal is dismissed in part for lack of appellate jurisdiction.

Defendants John A. Johnson and Stephen Farkas appeal from an order of the United States District Court for the Northern District of New York, David N. Hurd, *Judge,* denying their motions for summary judgment dismissing the claims asserted against them by plaintiffs Terrisina Jackson individually and Kateenya Thomas as guardian of Lee Jackson ("Jackson"), brought under 42 U.S.C. § 1983 and state law with respect to injuries suffered by Jackson at the age of 14, while a ward of the New York State Division for Youth ("DFY") at its Louis Gossett, Jr. Residential Center (the "Center"), as a result of allegedly excessive and unlawful restraint techniques used by employees of the Center. Farkas as director of the Center and Johnson as DFY Commissioner moved for summary judgment on the grounds that they are entitled to qualified immunity on the § 1983 claims and absolute immunity on the state-law claims, and they contend that the court erred in denying their motions. For the reasons that follow, we dismiss in part and affirm in part.

█ The district court denied appellants' qualified-immunity-based motions for summary judgment on the ground there were genuine issues of material fact to be tried. Where the district court has denied summary judgment because resolution of the immunity defense requires the adjudication of issues of fact that are inseparable from the merits, the denial is not immediately appealable. *See, e.g., Behrens v. Pelletier,* 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Johnson v. Jones,* 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Mitchell v. Forsyth,* 472 U.S. 511, 528–30 & n. 9, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Tolbert v. Queens College,* 164 F.3d 132, 138 (2d Cir. 1999); *In re State Police Litigation,* 88 F.3d 111, 124 (2d Cir.1996). On appeal from the denial of summary judgment, " 'we have jurisdiction to review [an] immunity defense only to the extent that it can be decided as a matter of law,' " *Cook v. Sheldon,* 41 F.3d 73, 77 (2d Cir.1994) (quoting *Golino v. City of New Haven,* 950 F.2d 864, 868 (2d Cir.1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992)), on the basis of " 'undisputed

facts and in isolation from the remaining issues of the case,'" *Johnson v. Jones*, 515 U.S. at 313, 115 S.Ct. 2151 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 n. 10, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)); *see also Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir.1996) (denial of summary judgment was immediately appealable where, for purposes of assessment of qualified-immunity defense, the defendant explicitly accepted the plaintiff's view as to the conduct in which the defendant had engaged).

On the basis of these principles, plaintiffs previously moved to dismiss these appeals. A motions panel of this Court, citing *Salim v. Proulx*, denied the motion, ruling that we have jurisdiction "to the extent that" the appeals can be resolved "on stipulated facts, or on the facts that the plaintiff[s] allege[ ] are true, or on the facts favorable to the plaintiff[s] that the trial judge concluded the jury might find." *Jackson v. Johnson*, Nos. 00–9305(L), etc. (2d Cir. Jan. 9, 2001) (internal quotation marks omitted). In light of the arguments now presented by Farkas and Johnson, we see in the present record no such basis for resolution of the appeals.

There are no relevant stipulated facts as to the conduct of Farkas and Johnson. Nor do Farkas and Johnson accept plaintiffs' view of their conduct. The evidence adduced by plaintiffs included proof that Jackson was rendered blind and quadriplegic as a result of a physical restraint technique used on him in 1996 that included placing him on the floor on his stomach with a Youth Detention Aide positioning himself across Jackson's back; that a 15–year–old DFY ward had died in late 1994 while that technique was being used on him; and that that technique had been criticized by a 1994 grand jury report which concluded that "even [if] properly performed [that technique] presents a danger of chest compression which prevents the ability to breathe," District Court's Memorandum–Decision and Order dated September 12, 2000, at 24 ("September 2000 Order"). Plaintiffs assert, based on testimonial and documentary evidence, that Farkas and Johnson failed to require adequate training for the pertinent Center personnel and knew or should have known that there was a foreseeable risk of serious harm to juvenile wards at DFY centers as a result of the deficiencies in training. While Farkas and Johnson state, conclusorily, that they accept for purposes of these appeals all of the facts that plaintiffs allege, in actuality they do not: At oral argument, for example, Johnson argued that he had no knowledge that chest-compression restraints that were of excessive duration would be harmful, and Farkas asked how he was supposed to know that his predecessor had not trained the pertinent Center personnel. (*See also* Farkas brief on appeal at 26 ("even if no 'special training' was given at [the Center in the months before] Farkas became the director ... it was reasonable for him to believe that such training had been given"); Johnson brief on appeal at 19 (the "single incident" leading to the death of the DFY ward in 1994 "would not have lead [*sic* ] a reasonable Commissioner to conclude that" mechanical restraints should be substituted for the existing physical restraint practices).) These arguments plainly do not accept plaintiffs' view of the facts, for which there is evidentiary support in the record, that Farkas and Johnson knew or should have known of the lack of training and the dangers of failing to train.

These arguments by Farkas and Johnson also belie their assertions that they accept "the facts the district court believed plaintiffs would be able to establish at trial" (Farkas brief on appeal at 1). The district court stated that plaintiffs' evidence would permit the inferences that,

*inter alia*, "Commissioner Johnson and Director Farkas were aware that DFY's restraint policy caused risks of serious injury and additional training was needed." September 2000 Order at 27. *See also id.* at 25 ("[T]he evidence suggests that Commissioner Johnson was aware [at least as early as 1995] of the potential dangers associated with the [physical restraint technique used on Jackson in 1996, which had led to the death of the 15–year–old boy in late 1994]. Whether his response was reasonable or constituted deliberate indifference to Jackson's constitutional rights is a question for a jury to determine."); *id.* ("a question of fact exists concerning whether Director Farkas took appropriate steps while director of [the Center] to ensure that staff were trained on the hazards presented by the" chest-compression practice); *id.* at 26 ("it is questionable that whatever training which was purportedly given was adequate, given the evidence in this case that medical attention was not provided immediately upon Jackson's loss of consciousness"); *id.* at 27 (Farkas and Johnson "have also failed to present any evidence concerning the type and frequency of medical training DFY staff received."). The district court concluded that "there are too many unsettled questions concerning the measures taken by these defendants and whether they were adequate." *Id.* The denial of the qualified-immunity-based summary judgment motions on this basis is not appealable.

■ As to the motions of Farkas and Johnson for summary judgment on the ground of absolute immunity, the district court ruled that they are not entitled to such immunity because their acts were neither quasi-judicial nor discretionary in nature. We affirm that ruling substantially for the reasons stated in the September 2000 Order.

We have considered all of the contentions of Farkas and Johnson that are properly before us and have found them to be without merit. The judgment of the district court is affirmed to the extent that it denied the motions to dismiss on the ground of absolute immunity; and the appeal is dismissed for lack of appellate jurisdiction to the extent that it seeks review of the denial of the motions to dismiss on the ground of qualified immunity.